**SERVICE TRUCKING COMPANY, Inc., Plaintiff,**

**v.**

**UNITED STATES of America and Interstate Commerce Commission, Defendants,**

**and**

**Kent Freight Lines, Inc., Preston Trucking Company, Inc.**

**and**

**Victor Lynn Lines, Inc., Intervenors.**

**Civ. A. No. 15249.**

United States District Court
D. Maryland.
April 2, 1965.

Francis W. McInerny, Washington, D. C. (Robert G. Miller, Washington, D. C., Joseph M. Roulhac, Baltimore, Md., Macdonald & McInerny, Washington, D. C., and Smith, Somerville & Case, Baltimore, Md., on brief), for plaintiff.

H. Neil Garson, Assoc. Gen. Counsel, Interstate Commerce Commission (William H. Orrick, Jr., Asst. Atty. Gen., John H. D. Wigger, Atty., Dept. of Justice, Thomas J. Kenney, U. S. Atty., and Robert W. Ginnance, Gen. Counsel, Interstate Commerce Commission, on brief), for defendants.

William J. Little, Baltimore, Md. (John R. Norris, Baltimore, Md., on brief), for intervenors, Kent Freight Lines, Inc., Preston Trucking Company, Inc., and Victor Lynn Lines, Inc., intervening defendants.

Before SOBELOFF, Circuit Judge, and THOMSEN and WINTER, District Judges.

WINTER, District Judge:

Service Trucking Company, Inc. (Service) sought a declaratory order, under the provisions of § 5(d) of the Administrative Procedure Act, 5 U.S.C.A. § 1004 (d), or, alternatively, an order interpreting its certificate of public convenience and necessity theretofore issued by the Interstate Commerce Commission. It sought to have decided that operations by it between Baltimore and points in Maryland east of the Chesapeake Bay, when conducted through another state under the circumstances hereafter outlined, are operations in interstate commerce, and authorized by its certificate.[1]

The Commission found against Service, and admonished Service to discontinue such operations, Service Trucking Company, Inc. Petition for Declaratory Order, 94 M.C.C. 222 (1963). Service then sued pursuant to the provisions of 28 U.S.C.A. § 1336, and the matter has been submitted to the Court, convened pursuant to 28 U.S.C.A. § 2325, on the record made before the Interstate Commerce Commission, the oral arguments and briefs of Service, defendants, and certain interested motor carriers who were permitted to intervene.[2]

The findings of the Commission are not controverted; nor is there any claim that they are not supported by substantial evidence. Except for minor supplementation, they were as recommended by

1. Service's certificate permits the carriage, over irregular routes of "Agricultural commodities, live and dressed poultry, canned goods, preserved foods, forest products, seafood and empty containers * * * " from, *inter alia*, "points and places in * * * Maryland * * * to * * * points and places in Maryland on and east of U. S. Highway 15 * * *." The carriage of general commodities, with the usual exceptions, is also permitted "from points and places in the above-described destination territory to points and places in * * * Maryland * * *."

2. These carriers, Kent Freight Lines, Inc., Preston Trucking Company, Inc., and Victor Lynn Lines, Inc., for practical purposes initiated this litigation. They filed complaint proceedings against Service before the Public Service Commission of Maryland alleging that Service engaged in intrastate regulated carriage, i. e., less-than-truck load shipments, for which it was not certificated. In an effort to obtain a declaration that the complaint of transportation was validated by its I.C.C. certificate, Service instituted the proceeding described in the opening paragraph of the text.

the examiner and in essential respects follow:

"Petitioner, for many years, has been transporting freight between points in Maryland, Delaware, and Virginia on the Delmarva Peninsula and points in the other areas it is authorized to serve. It maintains terminals as here pertinent at Baltimore and Federalsburg, and all shipments from the Baltimore area, and from points south and west thereof, move to points on the Delmarva Peninsula through its Baltimore and Federalsburg terminals. Initially, petitioner was primarily a carrier of freight, in truckloads, or volume quantities, for which no operating franchise was required in Maryland on intrastate traffic, but *beginning sometime after 1955, petitioner increased the handling of less-than-truckload shipments, and a large portion of its activity is now in this phase of transportation.* Some of this traffic consists of shipments from one Maryland point to another, principally from the Baltimore area to points on Maryland's Eastern Shore, and such shipments are combined at the Baltimore terminal with less-than-truckload shipments from points beyond Maryland. *The consolidated shipments are then transported in motor vehicles over routes in Maryland to the Delaware-Maryland boundary line, thence over Delaware Highway 404 to Bridgeville, thence over Delaware and Maryland State highways to Federalsburg, hereinafter called the Bridgeville route.* There the individual shipments are distributed by "peddle operations" to their ultimate destinations on the Delmarva Peninsula. *On shipments from points on the peninsula the procedure is reversed. Use of the Bridgeville route results in a circuitous between-terminals operation of approximately 12 miles when compared with the direct Maryland routes between the Chesapeake Bay Bridge and Federalsburg.*

*Petitioner asserts that it traverses the circuitous route through Delaware solely for the purpose of complying with its interstate certificate, but, admittedly, it utilizes the direct all-Maryland routes for nonregulated Maryland intrastate traffic and for shipments to points in Maryland already in the stream of interstate commerce.* Petitioner's evidence presented by the Preston Company shows that the latter carrier also routes certain less-than-truckload traffic having both origin and destination in Maryland over routes of some circuity through Delaware. Such routing, however, is for purposes of operating efficiency and economies necessitated in the handling of less-than-truckload traffic through terminals in Delaware, and no showing is made that any unlawful operations have arisen therefrom." (emphasis supplied)

Based upon these findings, the Commission concluded that " * * * petitioner by engaging in the considered transportation is attempting in bad faith to convert to interstate movements traffic which, but for its routing, is actually in intrastate commerce subject to the laws of Maryland."

As we have stated, Service makes no claim that the findings of fact made by the Commission are not supported by substantial evidence, and Service can make no claim that the Commission lacked jurisdiction to interpret the certificates of public convenience and necessity which it had theretofore issued, Service Storage & Tranfer Co., Inc. v. Virginia, 359 U.S. 171, 79 S.Ct. 714, 3 L.Ed.2d 717 (1959). From the findings of fact, the conclusion is inescapable that Service's only purpose in routing less-than-truckload shipments via Bridgeville, Delaware is to attempt to make legal, by converting into interstate shipments, shipments in intrastate commerce for which Service lacks authority from the Public Service Commission of Maryland. That such a purpose is in bad faith and a subterfuge warranting an order to

cease and desist has been decided in Hudson Transportation Company v. United States, 219 F.Supp. 43 (D.N.J. 1963), aff'd. sub nom. Arrow Carrier Corporation v. United States, 375 U.S. 452, 84 S.Ct. 524, 11 L.Ed.2d 477 (1964). See also, Jones Motor Co. v. United States, 218 F.Supp. 133 (E.D.Pa.1963), rehearing den. 223 F.Supp. 835 (E.D.Pa. 1963), aff'd. sub nom. Highway Express Lines, Inc. v. Jones Motor Co., Inc., 377 U.S. 217, 84 S.Ct. 1224, 12 L.Ed.2d 292 (1964).

Service attempts to distinguish the Hudson Transportation case on the ground that (a) it involved a problem of "tacking" certificates of public convenience and necessity where there was absent any finding that public convenience and necessity required "tacking" and (b) the degree of circuity in the case at bar (15%) is considerably less than the degree of circuity (50% in some cases)

proved in that decision. We do not think that what was decided in the Hudson Transportation case may be so limited. Rather, the breadth of its holding, affirmed by the Supreme Court, is dispositive of the case here.[3] The Jones Motor case is not to the contrary. On facts distinguishable from those in the case at bar, the Court found no subterfuge to avoid the necessity of obtaining Pennsylvania operating permits. The case was thus decided on a lack of evidence to show bad faith or subterfuge, rather than a departure from the governing principle to be applied where, as here, no logical basis for circuity, except that of subterfuge, has been shown.[4]

Perceiving no errors, factual or legal, in the order of the Commission denying Service's petition for a declaratory order, we deny the injunctive relief prayed in the complaint, and dismiss it. Counsel may agree on a form of order.

---

3. 219 F.Supp., at pp. 49–50:

"From all of the evidence in these two suits the unavoidable conclusion is that the Hudson and Arrow routes involved are not logical and normal operations through their headquarters; that the use by Hudson and Arrow of their tacked on routes is a deliberate, calculated method employed by those carriers to avoid the unfavorable consequences to them of their intrastate Pennsylvania traffic coming within the rightful jurisdiction of the Utility Commission of that Commonwealth. Said evidence overwhelmingly points to those tacked on routes as artificial, contrived arrangements adopted by Hudson and Arrow in order to obtain desirable Pennsylvania intrastate business which would be otherwise unavailable to them. The record makes it very clear that we are here dealing not with bona fide transportation in interstate commerce but with a mystic maze route which is a more or less shrewd expedient designed solely to escape the control of the Pennsylvania Commission. In the full sense of the word, the operations are subterfuges."

4. The opinions of the dissenting Circuit Judge on the merits, 218 F.Supp. 139, and on rehearing, 223 F.Supp. 836, make clear that his difference with the majority was purely factual and that the majority found a factual, logical basis for cir-

cuity such as to render the truck's journey interstate.

Significant, also, is a memorandum filed in the Supreme Court of the United States, on behalf of the United States and the Interstate Commerce Commission in the Jones Motor case. In the memorandum the Solicitor General expressed the view that " * * * the governing principles in this type of case have recently been established by Arrow Carrier Corp. v. United States and Interstate Commerce Commission, 375 U.S. 452 [84 S.Ct. 524, 11 L.Ed.2d 477]." It was added "As we pointed out in our motion to affirm filed in Arrow, it seems clear that there is no conflict between that case and the instant one as to the extent of the Commission's power. The only issue here is the application of the proper standards to the particular evidence of the case." Finally, it was said " * * * we believe that the Commission was warranted in concluding that the operations of Jones were a subterfuge since it found (a) that there had been circuitous routing and (b) that there was no showing by Jones that it performed any necessary service or operation on these shipments when they were transported through New Jersey. * * * However, as indicated above, the reasons for plenary consideration do not appear compelling in the light of this Court's disposition of the Arrow litigation."