**ROCK ISLAND MOTOR TRANSIT COMPANY et al., Plaintiffs,**

**v.**

**UNITED STATES of America and Interstate Commerce Commission, Defendants,**

**Watson-Wilson Transportation System, Inc. (formerly Watson Bros. Transportation Company, Inc.), Intervenor.**

**Civ. No. 6–1776–C–1.**

United States District Court
S. D. Iowa,
Central Division.

Aug. 11, 1966.

D. C. Nolan, Iowa City, Iowa, for H & W Express Co.

Thomas Bolton and Leo J. Steffen, Des Moines, Iowa, for Iowa Commerce Commission.

D. M. Statton, U. S. Atty., and Nahum Litt, I.C.C., Washington, D. C., for defendants.

Carl L. Steiner, Chicago, Ill., for Watson-Wilson, intervenor.

## MEMORANDUM OPINION

Before VAN OOSTERHOUT and BLACKMUN, Circuit Judges, and STEPHENSON, District Judge.

STEPHENSON, District Judge.

This is an action for review of an order of the Interstate Commerce Commission (ICC). The Commission proceeding is entitled, The Rock Island Motor Transit Company, et al. v. Watson-Wilson Transportation System, Docket No. MC–C–2972 (99 M.C.C. 303). Plaintiffs request that we enjoin and set aside the order entered in said proceedings.

On April 11, 1960, plaintiffs, Rock Island Motor Transit Company of Des Moines, Iowa (Rock Island), Burlington Truck Lines, Inc., of Chicago, Illinois (Burlington), and H & W Motor Express Company of Dubuque, Iowa (H & W), filed a petition before the Interstate Commerce Commission (ICC) seeking a declaratory order under Section 206 of the Interstate Commerce Act, 49 U.S.C. § 306, determining the lawfulness of transportation performed by Watson Bros. Transportation, Inc., of Omaha, Nebraska (Watson) between certain points in Iowa and requesting that Watson be ordered to cease and desist from conducting such allegedly intrastate operations.[1] The operations of the defendant that were questioned by the plaintiffs were principally as follows:

1. From Bettendorf, Davenport and Riverdale, on the one hand, and on the other, Council Bluffs, Des Moines, Iowa City, Newton and Sioux City;

John G. Fletcher, Des Moines, Iowa, for Rock Island Motor Transit Co. and Burlington Truck Lines, Inc.

---

1. The Iowa State Commerce Commission intervened in support of petitioners in the proceedings before the ICC.

2. Between Sioux City on the one hand, and on the other, Davenport, Bettendorf, Des Moines, Iowa City and Newton;

3. Between Council Bluffs on the one hand, and on the other, Atlantic, Bettendorf, Davenport, Des Moines, Iowa City and Newton.

While Watson had authority from the ICC to serve such Iowa towns in interstate commerce, it did not have authority from the Iowa State Commerce Commission to perform intrastate transportation between such Iowa points. Plaintiffs alleged that while Watson simulated an interstate operation between such Iowa points by transporting the shipments across the state line either at Rock Island, Illinois, or at Omaha, Nebraska and then back into Iowa for delivery, it was in fact engaged in intrastate commerce and that the above described operations were not bona fide and were conducted as a subterfuge for the purpose of evading the laws of the State of Iowa.

Watson filed a cross-petition seeking a declaratory order by the ICC under Section 204 of the Interstate Commerce Act, 49 U.S.C. § 304, to determine the lawfulness of certain operations of Rock Island and Burlington. Watson alleged that whereas Rock Island and Burlington transported certain shipments between points in Iowa and between points in Illinois by way of points outside of those states, and thus in interstate commerce, they billed these shipments as intrastate commerce. Watson seeks an order that Rock Island and Burlington cease and desist from billing such interstate commerce at the intrastate tariff.

I.

The facts in relation to plaintiffs' petition are not disputed and are derived primarily from evidence received at a 1959 Iowa Commerce Commission hearing in which Watson sought authority to operate in intrastate commerce.[2] As the examiner stated in his report:

"Watson's principal place of business since the formation of the company has been at Omaha, Nebr. Terminals have been maintained at Omaha since prior to 'grandfather' days, at Sioux City for 15 years, and at Rock Island, Ill., for several decades. No terminals are presently maintained at either Davenport or Council Bluffs, Iowa. Terminals are still located at Omaha, Nebr., and at Sioux City and Des Moines, Iowa. The manner of handling freight originating at Sioux City, Iowa, and destined to points in Iowa, would be by hauling it across the Mississippi River to Rock Island, Ill., and thence back to Davenport on the Iowa side of the river, or on to other Iowa destinations. As another example of Watson's operations, freight which now originates at Davenport, Iowa, and is destined to Des Moines or Sioux City, Iowa, moves outside of the state into Rock Island, Ill., where it is assembled, bills cut, manifests made, and drivers dispatched. Similarly, freight originating at either Atlantic or Council Bluffs, Iowa, points in the western part of the state, that is destined to another point in Iowa, now moves over to Omaha, Nebr., and back under interstate authority."

This practice of routing all shipments through Rock Island or Omaha involves some circuity. For example, since Omaha serves as the consolidating point for traffic moving out of the western part of the state, a shipment from Atlantic, 84 miles west of Des Moines on U. S. Highway 6, will move westerly 55 miles to Omaha to be consolidated there with other shipments having a similar destination; and, if the destination is a point on U. S. Highway 6 east of Atlantic (e. g., Des Moines, Iowa City or Davenport) the shipment will double back through Atlantic en route. A shipment from the eastern part of the state such as Iowa City,

---

2. Watson's application for intrastate authority was opposed by numerous carriers including plaintiff motor carriers herein. The application was denied by the Iowa Commerce Commission on September 19, 1960.

114 miles east of Des Moines on U. S. Highway 6, would be taken 64 miles east for consolidation in Rock Island, and then move to destination, which may involve hauling back through Iowa City. Shipments from Sioux City to Des Moines are routed through Omaha, a total distance of 231 miles while the direct route is only 206 miles.

On the basis of these facts, the examiner concluded that Watson's practice of circuitous routing and back hauling constituted a subterfuge and that Watson had done so in bad faith to escape the jurisdiction of the State of Iowa by converting to interstate commerce what would be, but for the circuitous routing, intrastate commerce. The examiner's conclusion was based on his opinion that the Rock Island and Omaha terminals could just as easily have been established in Davenport and Council Bluffs, that no logical reason appeared for the circuitous routing other than the fact that Watson had no intrastate authority, and that Watson's routing was neither normal nor natural in most instances. The examiner thus recommended that Watson be ordered to cease and desist from the complained of activities.

After the filing of exceptions to the examiner's recommendations, Division 1 of the ICC rejected the examiner's conclusion on this question and ordered that the plaintiff's petition be denied. The Commission's position is based upon its finding that Watson's routings were generally efficient and not contrived to attract and handle normally intrastate traffic, and upon its interpretation of the current decisions that circuity alone does not establish unlawfulness.

In finding that Watson's routings were generally efficient and not intended to attract intrastate traffic or evade the laws of Iowa by subterfuge, the Com-

mission relied upon several factors. First, the routing used for service from points in Iowa to other points in Iowa is for the most part the same as for multistate service to these Iowa points. These routes were found by the Commission to be designed for the purpose of efficient consolidation [3] and carrier convenience and not as a subterfuge. In addition, the evidence indicates that other carriers, including plaintiffs Rock Island and Burlington, find it economical and efficient from the standpoint of carrier convenience to use some of the same routing techniques. For example, Rock Island and Burlington, both possessing intrastate authority, route shipments to and from Council Bluffs through Omaha; Rock Island interlines at least part of its Davenport to Sioux City traffic at Omaha and serves Iowa points west of Atlantic circuitously through Omaha. Burlington also routes Des Moines to Davenport traffic through Moline, Illinois. The Commission concluded that "The inescapable inference is that Watson's choice of similar routings is based on like considerations" [4] of efficiency and carrier convenience.

The Commission also cites the small percentage of Watson's operations that are questioned. In this respect, the evidence shows that the questioned all-Iowa operations through Rock Island constituted less than three percent by volume and less than two percent by weight of Watson's multistate operations serving these Iowa points through Rock Island. All-Iowa shipments through Omaha constituted less than .7% by volume and less than .2% by weight of the operations serving Iowa points through Omaha. In addition, the major portion of these questioned shipments were between points with very little circuity such as those to and from Council Bluffs and to and from

3. In their brief plaintiffs suggest that "Finally, the effect of the Commission's order is to authorize Watson to transport via its circuitous routing techniques not only less-than-truckload shipments but also truck-load shipments between Iowa points." (plaintiffs' brief p. 23). How-

ever, Exhibits 10, 11, 13, 14, 15, 16, 18 and 19 indicate that the overwhelming number of shipments moving from Iowa-to-Iowa points are far less than a truck load. In fact only a handful appear to be of truck-load weight.

4. 99 M.C.C. at 312.

the Davenport area. Traffic over the more circuitous routes is much less substantial.[5] The Commission states that the total figure of less than three percent "compares favorably with the 'less than five percent' found lawful in Jones Motor Co. v. United States [D.C.], 218 F.Supp. 133, 137 and the about three percent in Service Storage & Transfer Co. v. Virginia, 359 U.S. 171, 174 [79 S.Ct. 714, 3 L.Ed.2d 717]." [6]

The Commission report then considers each of the questioned routes individually and finds that each is justified as being either "a normal, logical and efficient method of operation" (to and from Council Bluffs and to and from the Davenport area); "the same as the handling of Watson's interstate Traffic between the same points" (Sioux City to Davenport; Atlantic, Shenandoah and Creston to Des Moines); "the most efficient method of shipment considering the minimal volume (Iowa City or Atlantic, Shenandoah and Creston to Des Moines); or "the only logical way consistent with reasonably prompt service" (Ottumwa, Fairfield and Burlington traffic).

The Commission thus finds traffic on all of these routes to be conducted in good faith and bona fide. It then states that "The only operations of Watson which on this record appear to be at all questionable are those between Sioux City and Des Moines. Even there we find the evidence inconclusive." [7] The evidence shows that the circuitous route is 231 miles long while the direct route is 206 miles long. In addition Watson does carry some multistate traffic over the direct route. The Commission states that, "the volume and circuity between the two points also suggest the possibility that Watson could consolidate some or all of its less-than-truckload shipments at each of these origins and still maintain prompt * * delivery service * * *." The Commission concludes in this respect, however, that the evidence is insufficient to determine whether such direct shipments, without consolidation in Omaha, are in fact more economical and in the absence of other evidence pointing to subterfuge, the question of lawfulness should not be decided on the basis of comparative efficiency alone. Service Storage & Transfer Co., Inc. v. Commonwealth of Virginia, 359 U.S. 171, 176, 79 S.Ct. 714 (1959).

[1] The matter of interpretation of ICC certificates is initially for the Commission. In Service Storage & Transfer Co., Inc. v. Commonwealth of Virginia, 359 U.S. 171, 79 S.Ct. 714 (1959), the United States Supreme Court stated that, "It appears clear that interpretation of federal certificates of this character should be made in the first instance by the authority issuing the certificate and upon whom the Congress has placed the responsibility of action." The opinion of the Commission held to be decisive and controlling in the *Service Storage* case stated that, "In the absence of any showing that petitioner's use of its authorized route is a subterfuge to avoid State regulation, or other than a logical and normal operation through the carrier's headquarters, we are of the opinion that petitioner's operations, in the manner described, constitute bona fide transportation in interstate commerce * * *." [8]

5. Mr. Crosby, Vice-President and Director of Traffic for Watson, testified that in connection with the handling of involved shipments from Ottumwa, of the shipments handled during the period covered only about .2% moved between two points in Iowa. The same percent applied to shipments from Red Oak, Clarinda and Storm Lake. The percentage for Burlington was .1%; for Mason City .1%; for Iowa City .3% and for Atlantic .8%.

6. 99 M.C.C. at 312.

7. 99 M.C.C. at 315.

8. Service Storage directed all of its traffic from points in Virginia to points in Virginia through Bluefield, West Virginia for the purpose of consolidation at the Bluefield, W. Va. terminal. The Virginia State Corporation Commission fined Service Storage, who did not have intrastate authority, $5,000 for 10 such shipments alleged to have been intrastate and therefore in violation of the law of Virginia. Citing the ICC's finding, the Supreme Court reversed the convictions.

Another case analogous to the instant case is Jones Motor Co. v. United States, 218 F.Supp. 133 (E.D.Pa.1963), aff'd, Highway Exp. Lines, Inc. v. Jones, 377 U.S. 217, 84 S.Ct. 1224, 12 L.Ed.2d 292 (1964). In that case Jones, operating without intrastate authority, combined shipments between two points in Pennsylvania with interstate shipments, routing them through New Jersey. The Court reversed the ICC and affirmed the examiner's position that "1) the longer circuitous routes utilized by Jones in and of themselves were not proof of bad faith or subterfuge and, 2) there existed 'logical', 'practical' and 'feasible' reasons * * * from the standpoint of *operating efficiency and economy* * * *" for the questioned operations. The court also stated that the burden of proving subterfuge was on the petitioner (Pa. Public Utilities Commission) and added that "Since the Commission, in its Order bottomed its finding of bad faith solely upon the circuity of routing by Jones after agreeing with the Examiner in most respects, we must reject this unwarranted conclusion and adopt the Examiner's Corrected Report and Recommended Order."

The recent cases, Service Trucking Co., Inc. v. United States, 239 F.Supp. 519 (D.Md.1965), aff'd, 382 U.S. 43, 86 S.Ct. 183, 15 L.Ed.2d 36 (1965), and Hudson Transportation Co. v. United States and Arrow Carrier Corporation v. United States, reported jointly at 219 F.Supp. 43 (D.N.J.1963), aff'd, 375 U.S. 452, 84 S.Ct. 524, 11 L.Ed.2d 477 (1964), are not inconsistent with the *Service Storage* or *Jones* cases, nor with the result reached in the instant case. Service Trucking, Hudson and Arrow were all held to have operated in bad faith and in a manner to avoid the state law by subterfuge. Hudson and Arrow admitted in substance that were it not for their lack of authority to operate intrastate they would have used the more direct routes. In addition, neither company performed terminal services at out-of-state points while moving the traffic between state points. Service Trucking used the more

direct routes for nonregulated intrastate traffic and for multistate shipments. However, circuitous routes were used where intrastate authority was lacking. Thus in these cases circuitous routings were used for the sole purpose of evading intrastate regulation.

■ Upon review of the entire record herein, the Court is satisfied that under the applicable law there is substantial evidence to support the finding of the Commission that a subterfuge to evade the laws of the State of Iowa was not established.

## II.

Watson's cross-petition charged that Rock Island and Burlington were billing as intrastate commerce certain shipments between points in Illinois and between points in Iowa which were routed through other states. Watson alleged that inasmuch as interstate commerce is defined as "commerce between any place in a State and any place in another State or between places in the same State through another State" (Interstate Commerce Act, Section 203(a) (10); 49 U.S.C. § 303(a) (10)), these shipments were in interstate commerce and should be billed, rated and handled as such. Rock Island contends that the recent case, Hewitt-Robins v. Eastern Freightways, 371 U.S. 84, 83 S.Ct. 157, 9 L.Ed.2d 142 (1962), requires that the carrier select the cheapest available route or make a showing of adequate justification for not doing so.

■ The examiner and the Commission found that since the questioned operations of Rock Island and Burlington involved the routing of traffic across state lines for the carriers' convenience the same was interstate commerce under the law and the interstate rate must therefore be applied. An order requiring that Rock Island and Burlington cease and desist from billing, rating or handling as intrastate commerce traffic which has been transported across state lines was entered. We agree with the action of the Commission. *Hewitt-Robins* is not helpful to the plaintiffs for they have not shown by this record that

adequate justification for the interstate routes does not exist.

The action of the Commission is in all respects supported by substantial evidence and in accord with the applicable law. The order of the Commission is affirmed.