**TRI-D TRUCK LINES, INC., Plaintiff,**

v.

**INTERSTATE COMMERCE COMMIS-
SION and the United States of
America, Defendants,**

and

**Missouri Public Service Commission,
Intervening Defendant.**

**No. KC-2820.**

United States District Court
D. Kansas.

June 25, 1969.

Tom B. Kretsinger and Warren H. Sapp, of Kretsinger & Kretsinger, Kan-

sas City, Mo., and Donald A. Hardy, of Williamson, Cubbison, Hardy & Crossette, Kansas City, Kan., for plaintiff.

Robert W. Ginnane, General Counsel, and Philip W. Getts, Duluth, Minn., for defendant Interstate Commerce Commission.

Edwin M. Zimmerman, Asst. Atty. Gen., Benjamin E. Franklin, U. S. Atty., and John H. D. Wigger, Justice Department, for defendant United States of America.

Errol D. Taylor, Asst. General Counsel, for intervening defendant Missouri Public Service Commission.

Before BREITENSTEIN, Circuit Judge, and STANLEY and THEIS, District Judges.

## OPINION

THEIS, District Judge.

This case is an action under 28 U.S.C. § 1336 to set aside, vacate and annul an order of the Interstate Commerce Commission (ICC) and to enjoin enforcement of its order. The plaintiff carrier, Tri-D, properly invokes a three-judge court under 28 U.S.C. § 2284. The parties concede and the Court finds it has jurisdiction of the parties and subject matter of the cause.

The Interstate Commerce Commission's order resulted from a complaint filed by the Missouri Public Service Commission[1] alleging that Tri-D was using its interstate operating authority as a subterfuge to haul intrastate traffic in Missouri free from regulation by complainant, Missouri Public Service Commission. Plaintiff's complaint alleges the ICC's findings to be (a) arbitrary and capricious; (b) not based on substantial evidence upon the whole record; and (c) based on an erroneous concept of § 303(a) (10) of the Interstate Commerce Act.

The facts are really uncontested, and the controversy exists over the implications and conclusions to be derived from

them. These facts show that plaintiff carrier holds ICC authorities to transport general commodities between Kansas City, Missouri and Easton, Kansas, and between Easton and St. Joseph, Missouri, serving the small Kansas towns of Easton, Nortonville, Potter and Winchester. By combining, or "tacking" these authorities, plaintiff is able to provide service between Kansas City, Missouri and St. Joseph, Missouri. Plaintiff has no authority from the Missouri Public Service Commission for intrastate operation in Missouri. Other pertinent facts and the conclusion of the ICC hearing examiner are set forth in the quoted portions of his order, as follows:

"* * * that transportation of 48 shipments during the period May 2 through June 10, 1966, originating and terminating at points in Missouri over defendant's [Tri-D's] authorized routes in Kansas was unlawful and a mere subterfuge to evade the regulation of intrastate traffic by [Mo. P.S. C.]; that [Tri-D] should confine its transportation of traffic between St. Joseph and Kansas City, Mo., to traffic having origin or destination at points in States other than Missouri and which movement has not been interrupted by storage or comingling with other traffic; and that an order should be entered requiring defendant to cease and desist and hereafter refrain from transporting in interstate commerce any traffic which has both its origin and destination in Missouri."

Report & Order of Hearing Examiner, pp. 5-6.)

The hearing examiner also made this conclusion in finding the traffic in question was "unlawful and a mere subterfuge":

"* * * The interstate route [used by Tri-D] is 81.3 miles as compared with 51 over the intrastate route or 65 percent circuitous. The only reason

---

1. Missouri Public Service Commission v. Tri-D Truck Lines, Inc., Docket No. MC– C–5401, 107 MC–C–684, decided May 29, 1968.

for use of the interstate route is to provide the traffic with an interstate character and for [Tri-D] to avoid the jurisdiction of the Missouri regulatory body.

\* \* \* \* \* \*

"While there is no definite showing of bad faith herein, it appears that the longer interstate routing was not used for any logical economic or operational reason. Consequently, it must be concluded that the interstate routing was merely a subterfuge to convert Missouri intrastate traffic to interstate traffic for [Tri-D's purpose."

(Report & Order of Hearing Examiner, pp. 4–5.)

In making an administrative order, the procedural and evidentiary requisites for a hearing and order by an administrative body are set forth in 5 U. S.C. § 556(d).[2] In a suit to set aside and to enjoin enforcement of an administrative order, here specifically an ICC order, a three-judge court is governed by the scope-of-review provisions of the Administrative Procedure Act, 5 U.S.C. § 706.[3]

■ It is to be noted that both § 556 (d) and § 706 refer to the phrase "substantial evidence," and § 556(d) even uses the additional adjectives of "reliable" and "probative" in advance of the word "substantial." "Substantial evidence" has been defined on numerous occasions in similar vein. "Evidence is 'substantial' if it is the kind of evidence a reasonable mind might accept as adequate to support a conclusion." McGrath Corp. v. Hughes, 264 F.2d 314, 316 (2d

Cir. 1959), cert. den. 360 U.S. 931, 79 S.Ct. 1451, 3 L.Ed.2d 1545.

In Illinois Central R. Co. v. Norfolk & Western Railway Co., 385 U.S. 57, 87 S. Ct. 255, 17 L.Ed.2d 162 (1966), the Supreme Court said:

" 'Substantial evidence' is enough to justify, if trial were to jury, refusal to direct verdict when conclusion sought to be drawn from it is one of fact for jury."

There being no serious contention the ICC order was the result of arbitrary or capricious action, it is conceded by counsel, and the Court is in full accord, that the validity of the Commission's order depends upon whether it is sustained by substantial evidence.

Plaintiff contends the ICC erred in concluding from the evidence (1) that the movements of freight destined from Kansas City to St. Joseph may be presumed to be a subterfuge to evade regulation by the State of Missouri solely upon the existence of the stipulated fact that the interstate routing is 81.3 miles as against 51 miles by the most direct intrastate routing—and therefore deemed "circuitous;" (2) in concluding from all the evidence that plaintiff's longer interstate routing was without any logical economic or operational reason; and (3) in concluding the questioned shipments were "intrastate commerce."

■ At the outset it must be noted that the Constitution makes interstate commerce a federal domain, and that Congress, in the Motor Carrier Act, 49

---

2. 5 U.S.C. § 556(d) provides in pertinent part that:
"(d) Except as otherwise provided by statute, the proponent of a rule or order has the burden of proof. Any oral or documentary evidence may be received, but the agency as a matter of policy shall provide for the exclusion of irrelevant, immaterial, or unduly repetitious evidence. A sanction may not be imposed or rule or order issued except on consideration of the whole record or those parts thereof cited by a party and supported by \* \* \*

reliable, probative, and substantial evidence."

3. The pertinent part of 5 U.S.C. § 706, is as follows:
"[T]he reviewing court shall—\* \* \* (2) hold unlawful and set aside agency action, findings, and conclusions found to be—\* \* \* (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; \* \* \*."

U.S.C. § 303(a) (10) [4], specifically defines "interstate commerce" to include commerce "between places in the same State through another State." The exception to the rule stated by the congressional definition as established by case law is that where the controlling purpose of the movement through the second state is to evade regulation by the original state, there exists subterfuge in the use of interstate authority. The judicial term "subterfuge" has been used to define such bad faith operation to avoid reasonable or legitimate regulatory interests of the state involved. See Service Trucking Co., Inc. v. United States, D.C., 269 F.Supp. 519, aff'd. 382 U.S. 43, 86 S.Ct. 183, 15 L.Ed.2d 36 (1965); Hudson Transportation Co. v. United States, D.C., 219 F.Supp. 43, aff'd. Arrow Carrier Corp. v. United States, 375 U.S. 452, 84 S.Ct. 524, 11 L. Ed.2d 477 (1964); Jones Motor Company v. United States, D.C., 218 F.Supp. 133, aff'd. Highway Express Lines, Inc. v. Jones, 377 U.S. 217, 84 S.Ct. 1224, 12 L.Ed.2d 292 (1964); Rock Island Motor Transit Co. v. United States, 256 F.Supp. 812 (D.C.1966).

ICC argues that the showing of circuity alone, without a contra showing by plaintiff carrier of logical, practical and feasible reasons from the standpoint of operating efficiency and economy, creates a presumption of bad faith and subterfuge. The intervening defendant, Missouri Public Service Commission, goes even further, and says on page 5 of its brief:

"Herein, a subterfuge of state jurisdiction is implied merely by the act of operation. The implication is rebuttable, but in this instance it was not rebutted."

These assertions and the difference of opinion between counsel as to who has the burden of proof in this case, prompt

this Court to focus its attention on this aspect as a basis for decision.

Referring again to 5 U.S.C. § 556(d), it is clearly stated that "the proponent of a rule or order has the burden of proof." Both the ICC and Missouri Public Service Commission are the proponents of the ICC order and decision, and as such have the burden of proof by "reliable, probative and substantial evidence." We do not believe either the ICC or Missouri Public Service Commission have sustained their burden here. Here the examiner, and by affirmance the ICC, found "there is no definite showing of bad faith herein * * *," yet "the interstate routing was merely a subterfuge to convert Missouri intrastate traffic to interstate traffic. * * *"

■ The patent inconsistency is apparent. With good faith routing, where indeed is the ruse, subterfuge, malintent or abuse of the statute and the granted authority? It is claimed no economic justification was shown by the carrier. This was not plaintiff's burden, on the basis of presumed rather than proved subterfuge, founded only on the fact of mere circuity. Rather, in view of the wording of the statute defining "interstate commerce," an initial presumption would exist of the validity of carrier Tri-D's interstate operations until bad purpose was established by substantial evidence.

In this connection, we also note that the order of the hearing examiner would appear to flaunt the very same statutory definition by directing Tri-D to "refrain from transporting in interstate commerce *any* traffic which has both its origin and destination in Missouri." In the face of the plain and unambiguous wording of § 303(a) (10), it is apparently the view of the defendants that no traffic originating in Missouri with a destination in Missouri could lawfully be

---

4. The pertinent part of 49 U.S.C. § 303(a) (10) provides: "The term 'interstate commerce' means commerce between any place in a State and any place in another State or between places in the same State through another State, whether such commerce moves wholly by motor vehicle or partly by motor vehicle and partly by rail, express, or water: * * *."

hauled by plaintiff. We disagree with such a premise. Only that traffic tainted by subterfuge can be said to be outside the statutory definition—and such an all-inclusive determination relating to *any* traffic would have qualities of arbitrariness, capriciousness and pre-judgment.

The sparse record, depending mostly upon stipulated facts, indicates the evidence taken of shipments was for a brief, continuous period of forty days, the claimed intrastate shipments during that period accounted for 56% of the carrier's revenue, which in oral argument the plaintiff logically contended made plaintiff's service to the small Kansas towns (all under 600 in population) economical and feasible, there was no deviation in routing nor back-tracking indicated,[5] and there were no culpable admissions by plaintiff's officers or employees [6] other than the candid statement they were holding themselves as having Kansas City—St. Joseph authority on the permissible basis of "tacking" their authorities. There was no question of rates involved, which has commonly been a basis in many cases for evasion of state authority. There was no proof any shipper was misled or would have preferred a more direct routing in the interest of either time or expense.

We note also that in the hearing before the ICC, Churchill Truck Lines, Inc., a larger competitor of plaintiff, intervened. Churchill possessed both interstate and intrastate authority in Missouri, but because of its Missouri authority it was necessary that its routings between Kansas City, Missouri and St. Joseph, Missouri, serve the town of Cameron, Missouri, a routing distance of 78 miles, as against the most direct route of 51 miles. Apparently this carrier found the increased mileage by circuity—some three miles less than Tri-D's—feasible in its operations without offending either ICC or Missouri Public Service Commission.

We hold here, simply, that the defendants failed to meet their burden of proof by showing, through reliable, probative and substantial evidence, that the intrastate operations of plaintiff carrier were not within the authorized conduct and definition of 49 U.S.C. § 303(a) (10), and we affirmatively hold that the findings and conclusions of defendant Interstate Commerce Commission are *unsupported by substantial evidence as required in 5 U.S.C. § 706.* Accordingly, the order of the Interstate Commerce Commission in Missouri Public Service Commission v. Tri-D Truck Lines, Inc., Docket No. MC–C–5401, decided May 29, 1968, is hereby set aside, vacated, annulled and suspended. Further, both defendants, Interstate Commerce Commission and Missouri Public Service Commission, are hereby enjoined from enforcing or making such order effective. This judgment shall be without prejudice to any prospective administrative inquiry into the validity of carrier operations of Tri-D Truck Lines, Inc. within its certificates of authority.

---

5. In Hudson Transportation Co. v. United States, supra, the Court referred to "a mystic maze route which is a more or less shrewd expedient designed solely to escape the control of the Pennsylvania Commission."

6. In Service Trucking Co. v. United States, supra; Hudson Transportation Co. v. United States, supra; and the recent case of Leonard Express, Inc. v. United States, 298 F.Supp. 556 (W.D. Pa., 1969), cited and relied upon by defendant, the carriers all admitted their lack of intrastate authority was the basis of their interstate operation.