## HEWITT-ROBINS INCORPORATED *v.* EASTERN FREIGHT-WAYS, INC.

No. 37. Argued October 11, 1962.—Decided November 19, 1962.

*Harry Teichner* argued the cause and filed briefs for petitioner.

*Wilfred R. Caron* argued the cause for respondent. With him on the briefs was *Milton D. Goldman.*

MR. JUSTICE CLARK delivered the opinion of the Court.

This is an action by a shipper to recover from a motor carrier the difference in rate charges resulting from a practice of the latter of carrying unrouted intrastate shipments on its interstate routes at higher rates than those applicable to its available intrastate routes. The District Court for the Southern District of New York stayed the action awaiting a finding by the Interstate Commerce Commis-

sion as to the reasonableness of the practice. The Commission found it unreasonable* under the Motor Carrier Act, 49 U. S. C. §§ 301–327, and subsequently the District Court dismissed the complaint on the ground that the Act neither provided any reparation remedy nor preserved one at common law. 187 F. Supp. 722. The Court of Appeals, one judge dissenting, affirmed on the same grounds. 293 F. 2d 205. Each court bottomed its decision upon *T. I. M. E. Inc.* v. *United States,* 359 U. S. 464 (1959). Having some doubts as to the appositeness of that case and because of the importance of the question in the administration of the Act, we granted certiorari. 368 U. S. 951. We have concluded that *T. I. M. E. Inc., supra,* does not control the issue here and therefore reverse the judgments.

---

*302 I. C. C. 173. Respondent brought an action against the United States and the Commission in the District Court for the District of New Jersey, seeking to set aside the report and the cease-and-desist order entered by the Commission. After the complaint was filed the Commission amended its disposition by striking out the cease-and-desist order, leaving only its declaratory findings as to past practices. The three-judge court, relying upon our decision in *United States* v. *Interstate Commerce Commission,* 337 U. S. 426 (1949), held that as a three-judge court it had no authority to adjudicate the controversy since no order was under attack. 170 F. Supp. 848. Decision in the action is now held in abeyance by a single judge pending disposition of this litigation. Thus the litigation has been bifurcated into two District Courts, whose further proceedings may yet be separately appealable. This might have been avoided had the District Court for the Southern District of New York followed this Court's admonition that "the courts, while retaining the final authority to expound the statute, should avail themselves of the aid implicit in the agency's superiority in gathering the relevant facts and in marshaling them into a meaningful pattern," *Federal Maritime Board* v. *Isbrandtsen Co.,* 356 U. S. 481, 498 (1958), rather than relying upon the shipper to file an adversary proceeding with the Commission.

The petitioner alleges that between January 1, 1953, and February 1, 1955, it delivered numerous shipments of foam rubber pads to respondent, a common carrier by motor vehicle, for transportation from Buffalo, N. Y., to New York City. It claims that while the shipments were tendered without specifying the routes of shipment the respondent, contrary to its duty as a common carrier, shipped the pads over its interstate route at the higher tariff that it had on file with the Interstate Commerce Commission rather than over its intrastate route at the lower tariff that it had on file with the Public Service Commission of New York. Excess charges in the sum of $10,000 have been collected by respondent for which petitioner prays judgment.

The sole issue before us is whether the complaint states a cause of action upon which the District Court may grant relief. The gist of the action as alleged is that the shipper had the common-law right and the carrier owed it the duty to ship the pads over the cheapest available route, no adequate justification for not so doing being shown. Nevertheless, petitioner says, the carrier in derogation of this responsibility transported the pads at the higher rate and subjected the shipper to the $10,000 damage.

No attack is made upon either of the carrier's published tariffs—both are admittedly reasonable. The controversy hinges entirely upon whether the carrier violated its duty to the shipper in selecting the interstate route and the accompanying higher rate which subjected the shipper to the loss, *i. e.*, the difference between the two lawful rates. We believe that the complaint stated a justiciable cause of action. The issue here is a far cry from that in *T. I. M. E. Inc.* v. *United States, supra.* There the question, as stated by the Court, was, "Can a shipper of goods by a certificated motor carrier challenge

in post-shipment litigation the reasonableness of the carrier's charges which were made in accordance with the tariff governing the shipment?" 359 U. S. 464, 465. The Court determined that such an attack was foreclosed by the "saving clause" of the Act, § 216 (j), 49 U. S. C. § 316 (j), as being inconsistent with the statutory scheme of regulation. We emphasized the built-in protections given shippers against unreasonable rates, at pp. 478–480, citing the 30-day-notice provision of the Act, § 217 (c), as well as the power granted the Commission under § 216 (g) to suspend rates for seven months. The Court concluded that those remedies amply protected the shipper and that the allowance of a judicial remedy would result in undercutting the stability of the rate structure which the statutory procedures sought to insure.

Here the challenge is directed not at the "reasonableness" of the rates but at the carrier's misrouting practice. The question, therefore, is not one of rates but of routes. The determination of rail carriers' routing practices has long been within the primary jurisdiction of the Commission. *Northern Pacific R. Co.* v. *Solum,* 247 U. S. 477 (1918). This jurisdiction is the more important in the case of motor carrier routing where alternative routes are greater in both number and variety. Furthermore, selection of the route is usually made on an *ad hoc* basis, precluding preshipment determination of its reasonableness. Unlike rate making there is no statutory procedure by which routing practices may be challenged in advance of shipment. Nor is the shipper by truck accorded even the right given the shipper by rail, under 49 U. S. C. § 15 (8), to select and request a particular route of the carrier. In view of these weighty statutory differences between rate making and routing practices the survival of a damage claim for misrouting appears entirely consistent with the Act. It, therefore, meets the *proviso* of the "saving clause" as well as the teaching of *T. I. M. E. Inc.*

88

This conclusion is buttressed by the fact that the allowance here of a damage action nowise hampers the efficient administration of the Act, unlike the allowance of such an action as to unreasonable rates. A misrouting claim does not jeopardize the stability of tariffs or of certificated routes, the sole issue being whether the carrier routed the shipment over the cheapest available route, or made a showing of adequate justification for not doing so. Moreover, the allowance of misrouting actions would have a healthy deterrent effect upon the utilization of misrouting practices in the motor carrier field, which, in turn, would minimize "cease and desist" proceedings before the Commission. Finally, and not to be overlooked, the absence of any judicial remedy places the shipper entirely at the mercy of the carrier, contrary to the overriding purpose of the Act. The allowance of such actions would, on the contrary, give neither an unfair advantage.

Those who contend that no judicial remedy is available place much weight on the fact that, as we have said, the Interstate Commerce Commission has primary jurisdiction in routing practices. We put no significance in whether one tags the claim as "overcharges" as Commissioner Eastman apparently did in his testimony before the Senate, see *T. I. M. E. Inc., supra,* at 477–478, n. 18, or whether it is a proceeding involving the "reasonableness" of routing practices. In either case the problem is one originally within the jurisdiction of the Commission. To say, however, that such primary jurisdiction compels the conclusion that the courts are without power to award damages in every instance where the Commission may not award reparations by no means follows. Indeed, the doctrine of primary jurisdiction is designed to apply "where a claim is originally cognizable in the courts, and . . . enforcement of the claim requires the resolution of issues . . . placed within the special competence of an

administrative body . . . ." *United States* v. *Western Pacific R. Co.,* 352 U. S. 59, 64 (1956) ; see Davis, Administrative Law Treatise, § 19.01 (1958). The practice of the Commission in making such determination in the first instance, even though it has no power to award reparations in a given case, has long been exercised, *Bell Potato Chip Co.* v. *Aberdeen Truck Line,* 43 M. C. C. 337, 343 (1944), and is supported by a long line of cases. See *Thompson* v. *Texas Mexican R. Co.,* 328 U. S. 134 (1946), and cases there cited. Be this as it may, the survival of a judicial remedy under the saving clause of § 216 (j) cannot be determined on the presence or absence in the Commission of primary jurisdiction to decide the basic question on which relief depends. Survival depends on the effect of the exercise of the remedy upon the statutory scheme of regulation. According to § 216 (j), if the remedy is inconsistent with that scheme it does not survive. In *T. I. M. E. Inc.,* we found inconsistencies and hence no judicial remedy survived. Here, as we have indicated, rather than running interference against the Act the exercise of the judicial remedy supports its overall purposes and is nowise inconsistent with the congressional scheme embodied within its four corners. The remedy, therefore, survives and the judgment is

*Reversed.*

MR. JUSTICE HARLAN, whom MR. JUSTICE STEWART and MR. JUSTICE WHITE join, dissenting.

With deference, I consider that the *T. I. M. E.* case, 359 U. S. 464, plainly controls this one. That it does control is not and could hardly be gainsaid to the extent that the complaint purports to allege a statutory cause of action, that is, one based on the terms of the Motor Carrier Act itself. *T. I. M. E.,* at 468–472. However, con-

struing the complaint as alleging also a common-law cause of action, the Court holds that such an action is "not inconsistent" with the Motor Carrier Act and is therefore preserved by § 216 (j) of the statute.

The Court's decision rests primarily on the significance it accords to the existence of certain administrative procedures available to shippers to challenge *rates* in advance of their application, see §§ 216 (g) and 217 (c) of the Act, and the lack of such protective remedies in the case of *routing* practices. In addition, three further considerations are asserted to support its conclusion: (1) a misrouting claim does not jeopardize the stability of tariffs or of certificated routes, whereas to permit actions attacking the reasonableness of rates would hamper the efficient administration of the Act; (2) the allowance of misrouting actions will deter misrouting practices and decrease the number of "cease and desist" proceedings before the I. C. C.; (3) the absence of any judicial remedy would put the shipper entirely at the mercy of the carrier, contrary to the purpose of the Motor Carrier Act. This reasoning, I submit, entirely misconceives the basis of the *T. I. M. E.* decision.

The result reached in *T. I. M. E.* basically rested on two interdependent considerations: (1) the courts may not adjudicate a matter over which the Commission has been given primary jurisdiction, 359 U. S., at 473–474; (2) since the Commission must decide whether a rate is reasonable and Congress has denied it the authority to award reparations for past unreasonable charges, to allow a judicial remedy for recovery of past rate charges would "permit the I. C. C. to accomplish indirectly what Congress has not chosen to give it the authority to accomplish directly," *id.*, at 475.

Both of these factors are present here. There can be no doubt that under § 216 (b) and (e) of the Interstate Commerce Act the Commission has primary jurisdiction

over the complained of misrouting practices,[1] as indeed the Commission's action taken with respect to these very practices, *Hewitt-Robins, Inc.*, v. *Eastern Freight-Ways, Inc.*, 302 I. C. C. 173, and the Court's opinion in this case show. Nor is it suggested that the Commission possesses any reparations authority with respect to such misrouting. The conjunction of these factors thus brings *T. I. M. E.*, decided only four Terms ago, into full play.

1. It is true that in this instance the Act does not contain certain protective provisions as in the case of rate making. This cannot, however, serve to distinguish *T. I. M. E.*, whose determination of the congressional purpose underlying the Motor Carrier Act was based on considerations that stand quite independently of the impact of particular provisions of the statute. It should also be noted that the absence of such provisions does not mean that carriers may follow misrouting practices with impunity. Section 212 (a) of the Act provides that the Commission may, on its own initiative or on complaint, suspend or revoke certificates, permits, or licenses for willful failure to comply with any provision of the Act or any order or regulation of the Commission. Under § 216 (e) the Commission may order the termination of an unjust practice and prescribe the lawful practice to be followed. Section 222 (a) imposes fines for violations of the Act, and § 222 (b) confers jurisdiction on the District Courts to enjoin violations of the Act when application is made by the Commission.

---

[1] Section 216 (b) of the Interstate Commerce Act, 49 U. S. C. § 316 (b), provides in pertinent part: "It shall be the duty of every common carrier of property by motor vehicle . . . to . . . observe . . . reasonable . . . practices . . . relating to or connected with the transportation of property in interstate . . . commerce." Section 216 (e) provides that whenever "the Commission shall be of the opinion that any . . . practice . . . is or will be unjust or unreasonable . . . it shall determine . . . the lawful . . . practice."

2. If the issue as to the reasonableness of a routing practice is referred to the Commission, a procedure the Court recognizes as essential, allowance of a judicial remedy for misrouting will not jeopardize the stability of tariffs or of certificated routes. But the suggestion that such a danger was presented by a court action challenging unreasonable rates and that this contributed to the decision in *T. I. M. E.* is manifestly untenable. It was conceded there, as of course it had to be under prior decisions of this Court,[2] that the primary jurisdiction doctrine compelled referral to the Commission of all issues as to the reasonableness of the rates. Since even if a judicial remedy were allowed the Commission would have been the tribunal deciding the basic question, the course of decision would have been uniform and there would not have. been, any more than here, interference with the Commission's functioning in the area of its special competence or any threat to the stability of the rate structure. Moreover, the possibility that rate actions might constitute a threat to the rate structure through stimulating excessive litigation could hardly have been regarded as a significant factor in *T. I. M. E.,* for it was there observed that only a handful of actions to recover for unreasonable charges had been brought in the previous 24 years. 359 U. S., at 479. And if the Court now believes that to have been a relevant consideration in *T. I. M. E.,* it should certainly be of greater weight with respect to misrouting claims, which are likely to arise more frequently because, as the Court points out, "selection of the route is usually made on an *ad hoc* basis, precluding preshipment determination of its reasonableness." [3]

---

[2] See, *e. g., Texas & Pacific R. Co.* v. *American Tie & Timber Co.,* 234 U. S. 138; *Texas & Pacific R. Co.* v. *Abilene Cotton Oil Co.,* 204 U. S. 426.

[3] If the Court's reference to Commissioner Eastman's statement quoted in *T. I. M. E.,* at 477–478, n. 18, is intended to imply that

3. Finally, as to the suggestions that actions such as this should be allowed because of their incidental deterrent effect on misrouting practices and in the interest of justice to shippers, it need only be said that these are matters for the Congress.[4] Our duty is to apply the statute as we find it.

I would affirm.

---

the present action may be characterized as one for rate "overcharges" and thus is permissible, it should be noted that the "overcharges" to which the Commissioner referred were, as his statement makes clear, charges "above published tariff rates," *id.*, at 478, not those resulting, as alleged here, from the application of a wrong tariff. It is only the former that the Commissioner thought could be recovered "in court as the law now stands." *Id.*, at 478.

[4] So far, Congress has refused to act. See H. R. 8031, 86th Cong., 1st Sess. (1959); 359 U. S., at 471–472 and notes 10, 11.