CONSOLIDATED FREIGHTWAYS COR-
PORATION OF DELAWARE, a
corporation, Plaintiff-Appellee,

v.

FORTY-EIGHT INSULATIONS, INC.,
a corporation, Defendant-Appellant.

No. 73-1238.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 16, 1974.

Decided Aug. 29, 1974.

Wilson D. Burnell and Gary K. Mick-
ey, Aurora, Ill., for defendant-appellant.

Gerald D. Skoning, Chicago, Ill., for
plaintiff-appellee.

Before HASTINGS, Senior Circuit
Judge, and PELL and SPRECHER, Cir-
cuit Judges.

PELL, Circuit Judge.

Consolidated Freightways Corporation
of Delaware (Consolidated) brought this
action[1] against Forty-Eight Insulations,
Inc., (Shipper) to recover $5,165.00, al-
leged to be the balance due for freight
charges for two truckloads of insulating
materials transported by Consolidated
and connecting carriers from Shipper's
plant in North Aurora, Illinois, to a con-
signee in South Beaver Hill Lake, Alber-
ta, Canada. The shipments were re-
ceived without exception by the con-
signee. Defendant shipper has paid the
amount that Consolidated originally
quoted to it for the shipments, $2,455.78,
but denies Consolidated's right to re-
cover the additional charges, which are
based on "corrected" bills calculated un-
der a different, higher tariff.

The district court ruled in favor of
Consolidated. The court's opinion in its
entirety reads: "After careful consider-
ation of the stipulation of facts, argu-
ments and authorities, the Court finds
that the plaintiff is entitled to judgment
in the amount of $5,165.00, plus inter-
est." Forty-Eight Insulations has ap-
pealed.

---

1. The district court had jurisdiction under 28
U.S.C. § 1337 and the Interstate Commerce
Act, esp. Part II, 49 U.S.C. §§ 301–326.

*See* Madler v. Artoe, 494 F.2d 323 (7th Cir.
1974).

## I

The freight charges listed in Consolidated's first bills, which amounts the Shipper relied upon in negotiating a contract with its customer, had been computed from the Middlewest Motor Freight Bureau Tariff 50–B, MF–ICC 516 (the "Midwest Tariff"). Item 130 of that tariff states in part:

*"General Application of Rates"*

.     .     .     .     .     .

"The rates published herein *apply only* from points of origin to points of destination *named* and *may not be used as factors in computing combination rates* from or to origins or destination *not named.*" (Emphases added.)

Item 281–A, entitled *"Rates From or To Unnamed Points,"* modifies this provision. Part 1 defines the key terms:

"(c) An 'UNNAMED' point is one from or to which class rates are not provided, other than by use of this rule.

"(d) A 'NAMED' point is one from or to which class rates are provided in this tariff (or in tariffs governed hereby), other than by use of this rule."

Part 2 of Item 281–A provides for using the nearest named point of origin or destination where the unnamed point is located on a highway between named points. Part 3 provides for adding an arbitrary rate based on the distance in miles of the unnamed point from or to the nearest named point when the unnamed point is not located between named points. Item 281–A also includes an exception clause: "(a) The provisions of this item will not apply from or to unnamed points in Canada."

Consolidated, upon reinvestigation, concluded that it had erred in quoting to defendant shipper rates based upon the Midwest Tariff. It subsequently recomputed the freight charges in accordance with the Rocky Mountain Tariff. Under that schedule, the shipping costs came to $7,620.78, or $5,165.00 more than the sum previously calculated.

## II

In its answer to Consolidated's complaint, Shipper advanced various defenses, some of which might have prevailed if proven. On appeal, however, the primary thrust of the defense is that Consolidated's error was one of misrouting rather than one of misquotation of rates, a distinction which has received judicial recognition.[2] Shipper contends that if Consolidated had initially given it full and accurate information, it would have shipped the goods to Edmonton, a port of entry for customs inspection of commodities entering the province of Alberta and a "named point" under the Midwest Tariff, and then transshipped them from Edmonton to South Beaver Hill Lake. sixty miles west, under the inexpensive local Canadian rate.[3] The total freight costs would have been considerably less than those derived from the Rocky Mountain Tariff.

---

2. Even though a carrier misquotes the rate applicable to a particular shipment and adherence to the correct tariff would cause the shipper hardship, the carrier must collect the amount due under the authorized schedules. See 49 U.S.C. §§ 316(d) and 317(b), and *e. g.*, National Van Lines, Inc. v. United States, 355 F.2d 326, 331 (7th Cir. 1966). Further, all properly authorized tariff rules and regulations published by the carriers automatically become part of the contract between the carrier and the shipper. Eastern Motor Express, Inc. v. A. Maschmeijer, Jr., Inc., 247 F.2d 826, 828 (2d Cir. 1957), cert. denied, 355 U.S. 959, 78 S.Ct. 535, 2 L.Ed.2d 534 (1958). The purpose of these rules is to prevent discrimination or preference.

In contrast, a shipper may be relieved from the consequences of misrouting by the carrier. See Hewitt-Robins, Inc. v. Eastern Freight-Ways, Inc., 371 U.S. 84, 83 S.Ct. 157, 9 L.Ed.2d 142 (1962).

3. The parties stipulated that
   "[i]f plaintiff had quoted to defendant the amount under the Rocky Mountain Tariff instead of the amount quoted under the Midwest Tariff, defendant could have shipped the commodities . . . to a public warehouse at Edmonton, Alberta, Canada, which is a named point in the Midwest Tariff and trans-shipped said commodities under the local Canadian tariff rates from Edmonton to South Beaver Hill Lake, Alberta, Canada."

In accordance with this viewpoint, defendant formulates the issue on appeal as follows:

"Was it proper for plaintiff to so route these shipments as to incur a tariff rate of $5,165.00 for the 60 miles from Edmonton to South Beaver Hill Lake, Alberta, Canada, or should plaintiffs have routed said shipments to be transshipped that distance at the local Canadian tariff rate of $165.-26?"

For this defense, Shipper relies upon Hewitt-Robins, Inc. v. Eastern Freight-Ways, Inc., 371 U.S. 84, 83 S.Ct. 157, 9 L.Ed.2d 142 (1962), and Johnson Machine Works, Inc. v. Chicago, Burlington & Quincy R. R., 297 F.2d 793 (8th Cir. 1962).

The simple, and dispositive, answer to this contention is that Shipper arranged to ship the merchandise to South Beaver Hill Lake and not to Edmonton. No misrouting question is involved, only one of the applicable rate. The rate quoted was erroneous because there was only one correct rate for the shipments to South Beaver Hill Lake, and that was contained in the Rocky Mountain Tariff and not in the Midwest Tariff.[4] Under well-established authority, a carrier has no choice but to seek to recover the correct amount.

In argument to this court, Shipper contends that the carrier should have informed Shipper that it could have designated Edmonton as the consignment point and that independent arrangements could then have been made for a further shipment at the local rate from Edmonton to South Beaver Hill Lake. What might have been, as opposed to what in fact was, is frequently the basis of lawsuits, but in the absence of a duty it is an infirm basis. While we are unaware of any rule prohibiting Consolidated from volunteering this information, if the quoting agent was aware of it, which appears doubtful, we are equally unaware of any duty on the carrier to suggest a shorter haul than to the point to which the consignor stated the goods were to go. *Cf.* Kentner Truck Line, Inc. v. Maier Brewing Company, 183 Cal.App.2d 89, 6 Cal.Rptr. 572, 575 (1960) (duty to specify size of shipments so as to secure a more favorable rate), and Montpelier & Wells River R. R. v. Caldbeck-Cosgrove Corp., 110 Vt. 390, 8 A.2d 681, 682 (1939) (duty to specify a competitor line to the same destination.)

The present case, being therefore simply one of misquotation of the applicable rate to a particular designation, falls within the established law to which we have adverted. That law which may produce, and frequently has produced, harsh results is not founded on any principles of equity but on an overriding public policy, the necessity of eliminating discriminatory treatment between various shippers. The policy "is so strong that the courts almost universally hold that it is not a defense to an action by a carrier to recover the full rate after a mistaken undercharge that the carrier had originally informed the shipper that the rate was somewhat less than it is presently seeking to recover." Annot., Carrier—Understatement of Charges, 88 A.L.R.2d 1375, 1377 (1963).

Accordingly, we hold that Consolidated is entitled to recover the balance due under the Rocky Mountain Tariff. The judgment of the district court is affirmed.

Affirmed.

---

4. The defendant, in a memorandum to the district court, acknowledged the difficulties under the Midwest Tariff:

"[T]he freight charges quoted by Plaintiff and stated in the Original Freight Bills submitted by plaintiff are or would also be the correct freight charges under the Midwest Tariff for shipping the two truckloads of material from North Aurora, Illinois to South Beaver Lake, Alberta, Canada, *except for an 'Exception' in the Midwest Tariff which provides the Midwest Tariff 'will not apply from or to unnamed points in Canada'; and South Beaver Hill Lake is an unnamed point in the Midwest Tariff."* (Emphasis added.)

Consolidated stated in oral argument that South Beaver Hill Lake is a "named point" under the Rocky Mountain Tariff.