**OHIO EDISON COMPANY, Plaintiff,**

v.

**CITY OF HUBBARD, Defendant.**

**No. C75–37Y.**

United States District Court,
N. D. Ohio, E. D.

Oct. 28, 1975.

John C. Litty, Jr., Youngstown, Ohio, Russell J. Spetrino, Akron, Ohio, for plaintiff.

Howard M. Metzenbaum and Harold H. Sayre, Cleveland, Ohio, Richard T. Scullin, Law Director, Hubbard, Ohio, for defendant.

## MEMORANDUM OPINION AND ORDER

LAMBROS, District Judge.

On April 4, 1975, the Ohio Edison Company instituted these proceedings against the City of Hubbard, Ohio, seeking to recover the sum of $60,699.32 alleged to be owed to it for electricity supplied to defendant. Plaintiff also seeks a permanent injunction requiring the defendant municipality to make full payments in the future.

The amount due plaintiff represents part of billings made to defendant under rate schedules previously approved by the Federal Power Commission (F.P.C.). The city had paid so much of plaintiff's bills as represented the base rate but refused to pay the amount designated as being for fuel adjustment. Defendant asserts that the plaintiff has conducted itself in such a manner that much of the cost passed through the plaintiff via the fuel adjustment clause is unreasonable.

Plaintiff has moved for summary judgment arguing that defendant may not raise as a defense in these proceedings the reasonableness of plaintiff's actions in regard to the passing through of fuel costs. Rather, plaintiff contends, this is an issue dealing with the reasonableness of a duly approved rate which can only be raised in proceedings before the F.P.C. Defendant concedes that if the defense is found insufficient, summary judgment for plaintiff would be appropriate but argues that the defense does not draw in issue the reasonableness of rates but rather the reasonableness of the application and implementation of the fuel costs passed through by plaintiff.

The Court has heard oral argument on the motion, and evaluated the briefs and evidentiary matters submitted by the parties. For reasons to be set forth, plaintiff's Motion for Summary Judgment is denied.

## I. FACTUAL SETTING

On February 29, 1973, the plaintiff and 20 Ohio municipal corporations, including the defendant, filed with the F.P.C. a settlement agreement which reflected a negotiated settlement of plaintiff's wholesale electric rates. On August 29, 1973, the F.P.C. issued an Order approving the settlement making the rates effective from September 1, 1972. The rate, as approved, was composed of a capacity charge and an energy charge neither which is in issue herein, and a fuel adjustment provision, which is the issue herein. This latter clause provided that for each kilowatt-hour used, so much of the total cost of the fossil fuels burned by plaintiff during the month immediately preceding the billing month above or below an average cost would, after certain other computations, be passed through to the customer as either an increase in the billing, or a credit, depending on whether the cost was above or below the average cost per hour. (The only fossil fuel relevant here is coal) There is no question that defendant did approve this rate and that the F.P.C. found it to be reasonable and proper.

What happened next is, even absent the figures provided by the parties, almost a matter for judicial notice. Between the embargo imposed by the oil producing nations and the effects of double-digit inflation, the cost of fossil fuels skyrocketed. Indeed, from May

1973 to May 1974, plaintiff's average cost per ton of coal doubled. And this charge was passed directly through to the municipalities, including the defendant.

The rapidity of the rise can be demonstrated by an analysis of the cost figures provided by plaintiff. At the time the settlement agreement was filed with the F.P.C., plaintiff was paying one coal producer (Albert Schiappa) $5.90 per ton of delivered coal. At the same time, another producer (Valley Camp Coal) was being paid $9.85 per ton of coal (f. o. b.) from its No. 1 Mine. By April 1975, plaintiff was paying Schiappa $9.75 per ton, and Valley Camp was receiving $22.031 per ton of coal. Other coal producers were charging prices which were, at times relevant herein, approaching $50.00 per ton. Even allowing for differences in the quality of coal, location of the purchase plant and method of delivery, these charges were enormous in view of the cost changes in the preceding six to seven years.

It appears that defendant sought information as to the purchasing agreements plaintiff had with its coal producers and as to plaintiff's connection with suppliers, if any. When plaintiff refused to provide this information, defendant refused to pay the fuel adjustment cost. Confronted with the practical impossibility of terminating service to a city, plaintiff commenced this action.

## II. APPLICATION OF THE LAW

█ Plaintiff does not contest the fact that the charges it makes must be reasonable. Under 16 U.S.C.A. § 824d (a), a public utility may only collect such rates and charges as are just and reasonable. This is a general principle appearing not only in the United States Code but which is established in the common law (See *Montana-Dakota Utilities Co. v. Northwestern Public Service Co.*, 341 U.S. 246, 252, 71 S.Ct. 692, 95 L.Ed. 912 (1951)) and which has also been carried through in that portion of the Uniform Commercial Code dealing with sales of goods, see specifically U.S.C. §§ 2–305 and 2–306.

At oral agrument, plaintiff conceded this point, arguing that the decision as to reasonableness has already been made by the F.P.C. Until that body determines otherwise, plaintiff argues, Ohio Edison can collect the rate as established, including the pass through of those costs attributable to fossil fuels burned to produce the electricity it sells.

Plaintiff argues that the reasonableness of the rates is a matter for the F.P.C., subject to review in the Court of Appeals, and in no way properly before this Court. Support for this position lies in the decision by the Supreme Court in the *Montana-Dakota Utilities* case, *supra,* wherein one electric company sued another in an attempt to recover for payments made on rates which were allegedly unreasonable although approved by the F.P.C. Plaintiff asserted that by virtue of interlocking directorates, the defendant had controlled the rate setting proceedings before the F.P.C. so as to subvert plaintiff's interest to that of the defendant. The Court denied relief, holding that the reasonableness of the rate was for the Commission not the Court and "that the right to a reasonable rate is the right to the rate which the Commission files or fixes . . . " *Montana-Dakota Utilities, supra,* at 251–2, 71 S.Ct. at 695.

This decision was reinforced by the Supreme Court in *United States v. Western Pacific Railroad Co.*, 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956), which involved an action by carriers to obtain a determination as to which tariffs should be applied to particular shipments. The Court held that primary jurisdiction lay with the Interstate Commerce Commission. In its decision, however, the Court indicated that such treatment was not always required:

> By no means do we imply that matters of tariff construction are never cognizable in the courts. We adhere to the distinctions laid down in *Great*

*Northern R. Co. v. Merchants Elevator Co., (US)* supra [259 U.S. 285, 42 S.Ct. 477, 66 L.Ed. 943]; which call for decision based on the particular facts of each case. *Western Pacific, supra,* at 69, 77 S.Ct. at 168.

In a far earlier Supreme Court decision, a similar view had been expressed. In *Pennsylvania Railroad Company v. Puritan Coal Mining Company,* 237 U.S. 121, 35 S.Ct. 484, 59 L.Ed. 867 (1915), the Court was confronted with a suit by a mining company against a railroad for failing to supply it with coal cars on a *pro rata* basis as it was obliged to do. The Supreme Court determined that the state court had jurisdiction to hear the case and award damages, drawing a distinction between rule promulgation and rule enforcement. An attack on the reasonableness of the rate itself would in the first instance be a matter for the Commission.

> But if the carrier's rule, fair on its face, has been unequally applied, and the suit is for damages occasioned by its violation or discriminatory enforcement, there is no administrative question involved, the courts being called on to decide a mere question of fact as to whether the carrier has violated the rule to plaintiff's damage. Such suits, though against an interstate carrier for damages arising in interstate commerce, may be prosecuted either in the state or Federal courts. *Puritan Coal, supra* at 131–32, 35 S.Ct. at 488.

The most significant case however, is the most recent, being the Supreme Court's holding in *Hewitt-Robins v. Eastern Freight-Ways,* 371 U.S. 84, 83 S.Ct. 157, 9 L.Ed.2d 142 (1962). In that case, a shipper sought to recover damage from a carrier stemming from the carrier's decision to transport the shipper's goods on an interstate route, the result being the subjection of plaintiff to a higher tariff. The Court found that an action in the courts for damages would be the proper response. There was no way for the route to be challenged by the plaintiff shipper in advance since the final decision was made by the carrier, the Court noted. Moreover, the resolution of the case would not involve broad policy questions the determination of which would affect administration of the relevant laws and regulations since the decision would be limited to the facts of the particular case.

Such is the situation in the case at bar. The rate has been determined by the F.P.C. but included in the rate is an open-ended cost factor. There is no challenge to the make-up of the rate but rather to its application. The defense raised is not that the average cost factor included is incorrect, or that inclusion of the state gross receipts tax is improper. Rather, the challenge is analogous to a determination as to whether or not the bill was correctly computed. Concededly the factors to be weighed are far less easy to handle than is multiplication of rates and hours, but the principle is the same.

The defendant challenges the propriety of plaintiff's conduct in purchasing coal. The plaintiff was obligated to act reasonably in incurring these charges and thus there was included in the fuel cost pass through clause a limiting factor which is reasonableness. There was no way for defendant to secure an advance determination on the reasonableness of plaintiff's conduct because there was nothing to examine until the costs had been incurred. The decision on the plaintiff's defense affects only plaintiff and in no way disrupts other utilities nor does it inhibit the F.P.C. in its efforts to regulate the industry. Accordingly, the Court finds that the defense is properly asserted in this action.[1]

1. The Court notes that the proposed amendments to the F.P.C. regulations involving fuel cost pass throughs had no impact on the decision herein. See 40 Fed.Reg. 26702. These proposals are not law nor is there any assurance they will be. Accordingly the Court finds them entitled to no weight.

### III. SUMMARY JUDGMENT

As noted, the basis of the defense is that plaintiff failed to enforce its contracts with coal suppliers and instead went into the spot market to buy coal, unconcerned as to the cost of coal since this cost could be passed through to the consumer.

 Without intending any view toward to ultimate validity of this defense, the Court finds there are sufficient factual issues presented as to preclude the granting of summary judgment under Rule 56, Federal Rules of Civil Procedure. Moreover, as a general rule, summary judgment is to be used sparingly in complex cases, *Good Investment v. Corning Glass,* 493 F.2d 891 (6th Cir. 1974), or in situations where bad faith is alleged, *Hines v. Local Union No. 377,* 506 F.2d 1153 (6th Cir. 1974).

Therefore, plaintiff's Motion for Summary Judgment is denied.

It is so ordered.