NEPERA CHEMICAL, INC., Plaintiff,

v.

SEA–LAND SERVICE, INC., Defendant,

United States of America and the
Federal Maritime Commission,
Intervenors.

Civ. A. No. 79–3022.

United States District Court,
District of Columbia.

Oct. 28, 1981.

Martin Sterenbuch, Washington, D. C., for plaintiff.

Edward M. Shea, Francis W. Fraser, Washington, D. C., for defendant.

Asst. U. S. Atty. John O. Birch, Dept. of Justice, Washington, D. C., for intervenors.

## MEMORANDUM ORDER

JOHN GARRETT PENN, District Judge.

The plaintiff filed this negligence action requesting compensatory and punitive damages and attorney fees, costs and related expenses for prosecuting an appeal from the Federal Maritime Commission (FMC) to the United States Court of Appeals for the District of Columbia. The case is now before the Court on defendant's motion for summary judgment and plaintiff's cross motion for partial summary judgment.[1]

I

The underlying facts are set forth in the Stipulation of Facts signed and filed by counsel on March 17, 1980. That stipulation, without the attached exhibits, is attached hereto and incorporated as the statement of facts in this Memorandum Order.[2]

1. The Court had scheduled this case for a hearing on October 19, 1981. Counsel for plaintiff did not appear and the Court was later advised that counsel had not received the notice of hearing, the notice having been sent to his former address due to the fact that a change of address notice is not filed in the court jacket. Although plaintiff had requested oral argument, the limited issue before the Court has been fully briefed by the parties and the Court concludes that oral arguments are not necessary. See Local Rule 1–9(f).

2. The four exhibits are (a) the Application of Sea-land Service, Inc. to the Federal Maritime Commission for the benefit of Nepera Chemical, Inc. dated December 7, 1978, (b) the initial decision of the Administrative Law Judge filed April 23, 1979, (c) Sea-land's exceptions to the initial decision dated May 14, 1979, and (d) the

*See* Appendix A. Those facts contained in the attached stipulation will not be repeated here.

After the filing of the attached stipulation, the FMC and the United States filed a motion for leave to intervene and to join with defendant in its motion for summary judgment. Thereafter, this case remained inactive while plaintiff prosecuted its appeal in the United States Court of Appeals. The Court of Appeals reversed the decision of the FMC and remanded to the agency. *Nepera Chemical, Inc. v. Federal Maritime Commission*, 662 F.2d 18 (D.C.Cir.1981). The court held that the FMC had erroneously denied the application by defendant for a waiver of freight charges for the benefit of the plaintiff with the result that, of the $56,361.15 paid by plaintiff, defendant is now entitled to refund the overcharge of $42,569.90 to the plaintiff. *Id.*, at 20, n. 7.

In this case, the plaintiff seeks compensatory damages in the amount of $42,749.90, punitive damages in the amount of $100,000 and legal fees, court costs and related expenses paid by plaintiff in prosecuting the appeal in the United States Court of Appeals. The amount of compensatory damages claimed by plaintiff is almost equal to the difference between the original rate defendant represented it would charge and the rate defendant actually was required to charge as the result of the tariff.

Both the Federal Maritime Commission and the United States have moved to intervene in these proceedings and that motion is granted.

## II

The Court assumes that plaintiff no longer seeks compensatory damages in this case in view of its success in the Court of Appeals. *See Nepera Chemical, Inc. v. Federal Maritime Commission, supra.* Nevertheless, the Court must determine whether it had jurisdiction to award compensatory damages if plaintiff, either had not prosecuted the companion case or had been unsuccessful in that appeal.

FMC report and Order adopting the initial deci-

■ The defendant and the intervenors contend that plaintiff's sole remedy under the facts of this case was to seek FMC approval to refund the overcharge or to waive collection of the freight charge pursuant to Section 18(b)(3) of the Shipping Act, 46 U.S.C. § 817(b)(3). This Court agrees.

Plaintiff's argument that it may maintain an action at common law is without merit. Plaintiff relies principally on two cases to support its argument, *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976), and *Hewitt-Robins, Inc. v. Eastern Freight-Ways*, 371 U.S. 84, 83 S.Ct. 157, 9 L.Ed.2d 142 (1962), but those cases are distinguishable.

The claimants in *Nader* and *Hewitt-Robins* did not challenge the tariffs in those cases. In *Nader*, the claimant complained of the overbooking practices of the airline and "[h]e [made] no challenge to any provision in the tariff." 426 U.S. at 304, 96 S.Ct. at 1987. The claimant in *Hewitt-Robins* made no attack on the carrier's published tariffs, rather the controversy there "hinge[d] entirely upon whether the carrier violated its duty to the shipper in selecting" a route which subjected the shipper to a higher rate. 371 U.S. at 86, 96 S.Ct. at 159. Here, the plaintiff seeks indirectly to challenge the rate it was charged thereby raising a question of the validity of the rate or practices included in the tariff filed with FMC. For these reasons, the Court concludes that plaintiff cannot maintain a separate action for compensatory damages.

The same rationale applies to plaintiff's claims for punitive damages. Additionally, the plaintiff has set forth no facts which would entitle it to an award for punitive damages. Defendant is entitled to summary judgment as to both compensatory damages and punitive damages.

## III

■ Plaintiff's final claim is for attorney fees and costs and expenses for prosecuting

sion filed August 8, 1979.

its appeal to the United States Court of Appeals in the related case. *See Nepera Chemical, Inc. v. Federal Maritime Commission, supra.* In order to recover for attorney fees, the plaintiff must demonstrate that it is entitled to an award pursuant to a contract or agreement between the parties or a statute. This is the "American Rule". *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *F. D. Rich Co., Inc. v. United States, ex rel. Industrial Lumber Co., Inc.,* 417 U.S. 116, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974). Plaintiff has made no showing that it is entitled to attorney fees, costs and expenses for prosecuting either this case or the related case. In view of the above, defendant is entitled to summary judgment.

### ORDER

It is hereby

ORDERED that the motion by the Federal Maritime Commission and the United States to intervene is granted, and it is further

ORDERED that the plaintiff's motion for partial summary judgment is denied, and it is further

ORDERED that defendant's motion for summary judgment is granted, an appropriate order dismissing this case shall be entered.

### APPENDIX A

### STIPULATION OF FACTS

The parties hereto, by and through their respective counsel, hereby stipulate to the following facts. This stipulation shall be controlling in connection with all subsequent motions and pleadings.

The following facts are true:

1. Nepera Chemical, Inc. ("Nepera") is a New York corporation with principal offices in Harriman, New York.

2. Nepera manufactures and distributes various chemicals, including liquid chemicals known as "picolines," or "beta picolines," which are used in making nicotinic acid.

3. Sea-Land Service, Inc. ("Sea-Land"), a Delaware corporation with principal offices in Edison, New Jersey, is an ocean-going common carrier operating in foreign commerce and is subject to the Shipping Act of 1916, as amended, 46 U.S.C. § 801, *et seq.*

4. Prior to December 31, 1977, Sea-Land's commodity rates for shipments from United States North Atlantic ports to Spain were published as Sea-Land Freight Tariff 166, FMC–43.

5. Item 9140 of Freight Tariff 166 contained a rate for "picalines [sic], refined, mixed" of $6.85 per hundred weight ("cwt"), 40,000 pounds per container minimum.

6. Effective December 31, 1977, when Sea-Land joined U. S. North Atlantic/Spanish Freight Agreement 10117, Sea-Land's rates for shipments in tank containers were transferred from Freight Tariff 166 to Freight Tariff 232 and converted to a weight ton (2,240 lbs.) basis to conform Sea-Land's rates with those of other carriers on the same trade lane.

7. Prior to the date when this change took place, Sea-Land's Sales Division notified the Pricing Department that Nepera had been utilizing the $6.85 per cwt rate for picolines under Tariff 166, and requested that the Pricing Division make sure that this rate was "protected" (maintained) when rates under Tariff 166 were converted and transferred to Tariff 232.

8. Sea-Land's Sales Division then informed Nepera that the rate for picolines would be "extended to the Sea-Land Tariff 232, thereby enabling [Nepera] to continue exporting ... at the ... rate of $6.85 per cwt, minimum 40,000 lbs." (Letter from Karl E. Douglass to Edith Soderberg, dated December 6, 1977, Exhibit A, p. 9.

9. Sea-Land's Pricing Department failed, however, to publish the rate for picolines in Tariff 232.

10. On or about June 7, 1978, Nepera booked a three tank-container shipment of

picolines for transport from Elizabeth, New Jersey to Barcelona, Spain via a Sea-Land ship scheduled for sailing on June 10, 1978.

11. Because the specific rate for picolines had not been transferred to Tariff 232, the shipment was billed by Sea-Land under Item 10 of Tariff 232, the tariff rate for liquid commodities, "not otherwise specified," which rate was $631.25 per weight ton (WT), 40,000 lbs. minimum, i. e., a rate more than four times the picolines rate.

12. Upon receipt of the bill of lading, Nepera's consignee, Kuehne & Nagel, contacted Sea-Land concerning the charges, and Sea-Land thereupon represented that it would have the situation corrected to maintain the quoted rate of $6.85 per cwt.

13. On June 21, 1978, Sea-Land published a tariff item for picolines in Tariff 232, providing a rate of $162.25 per WT, 17 WT minimum.

14. This rate, however, was not the exact equivalent of the quoted rate of $6.85 per cwt, 40,000 lbs. minimum. The exact equivalent of $6.85 per cwt, 40,000 lbs. minimum, converted to the new weight basis, would have been $161.18 per WT, 17 WT minimum.

15. Section 18(b)(3) of the Shipping Act, 46 U.S.C. § 817(b)(3), provides that the Federal Maritime Commission may permit a carrier to waive or refund a portion of freight charges where it appears that there has been an "error due to inadvertence in failing to file a new tariff," provided that application for such permission is made within one hundred and eighty days from the date of shipment, and provided that, prior to making application, the carrier files a new tariff "which sets forth the rate on which such refund or waiver would be based."

16. On December 7, 1978, Sea-Land made application in a "special docket proceeding" to the FMC (FMC Special Docket No. 606) for permission to refund and/or waive the amount by which freight charges at the rate for liquid commodities "not otherwise specified" exceeded charges at the tariff rate for picolines.

17. By an initial ALJ decision of April 23, 1978, adopted by the FMC on August 8, 1979, Sea-Land's application was denied on the ground that the rate which Sea-Land put into effect after the subject shipment was not the same rate which Sea-Land had quoted prior to shipment. The FMC accordingly ordered Sea-Land to recover the "full amount of freight charges." (See Exhibit B, p. 9 and Exhibit D generally).

18. The "full amount of freight charges" on the aforesaid shipment, at the rate for liquid commodities "not otherwise specified" is $33,816.69, compared to $8,220.18, which Nepera would have paid under the old picolines rate, i. e., a difference of $25,596.51.[1]

19. The FMC's decision would have become final and enforceable if no other action had been taken. Sea-Land did not petition the U. S. Court of Appeals for review of the FMC's decision, and advised Nepera that it would not do so.

20. On October 5, 1979, Nepera, through counsel, petitioned for review of the FMC decision in the U. S. Court of Appeals for the District of Columbia, 662 F.2d 18.

21. Unless the decision of the FMC is reversed by the U. S. Court of Appeals on review, Nepera will be required to pay Sea-Land $25,596.51 in additional freight charges.

22. Authentic, true copies of:

1. Another shipment, consisting of two containers of beta picolines and referenced by Freight Bill 901–021623, was also charged under Tariff 232 at $631.25 per WT, the rate for shipment of liquid commodities, not otherwise specified, which are routed directly to Barcelona. This shipment, however, was actually shipped to Rotterdam and transported by truck from there to Barcelona. Although Sea-Land included this shipment in its application for relief from the Tariff 232 rate, the correct tariff for this shipment is North Atlantic Continental Freight Conference Tariff 29, FMC–4, 21st Rev., p. 158, Item 512.8528.606. This provides a specific rate for picolines of $155.00 per WT. The correct amount of freight charges for this shipment is thus $5,258.93. Nepera in fact paid $5,797.00 or $538.07 more than the applicable freight charges for this shipment.

a. the Application of Sea-Land Service, Inc. [to the FMC] for the Benefit of Nepera Chemical, Inc., dated December 7, 1978;

b. the Initial Decision of Norman D. Kline, Administrative Law Judge for the FMC, served April 23, 1979;

c. Sea-Land's Exceptions to the Initial Decision, dated May 14, 1979; and

d. the FMC Report and Order Adopting the Initial Decision, served August 8, 1979

are attached hereto as Exhibits, A, B, C, and D, respectively.