AVR, INC., et al.

v.

**CHURCHILL TRUCK LINES, INC., et al.**

No. 4–95–CV–401.

United States District Court,
D. Minnesota,
Fourth Division.

Jan. 26, 1996.

Injunctive Order Feb. 5, 1996.

Brent William Primus, Craig L. Engwall, Cynthia A. Litwitz, Primus Law Office, Minneapolis, MN, Karl L. Cambronne, Jeffrey D. Bores, Chestnut & Brooks, Minneapolis, MN, Mark Reinhardt, Gavin S. Wilkinson, Reinhardt & Anderson, St. Paul, MN, for AVR, Inc., Amidon Graphics.

Andrew Robert Clark, Kalina Wills Woods Gisvold & Clark, Minneapolis, MN, Patrick K. McMonigle, Dysart Taylor Penner Lay & Lewandowski, Kansas City, MO, for Churchill Truck Lines, Inc.

Robert Paul Thavis, Douglas Bruce Greenswag, Keith S. Moheban, Leonard Street & Deinard, Minneapolis, MN, Joseph L. Steinfeld, Jr., Shawn Mann & Niedermeyer, Washington, DC, for Trans–Allied Audit Co., Inc., Rodney Johnson.

## ORDER

ROSENBAUM, District Judge.

Defendant Churchill Truck Lines, Inc., through defendant Trans–Allied Audit Company, Inc., is attempting to collect sums claimed to be freight undercharges for past services rendered. The putative plaintiff class denies these sums are due or owing.

In May, 1995, various shippers, including plaintiff AVR, Inc., who had used the services of defendant Churchill Truck Lines, Inc., petitioned the Interstate Commerce Commission ("ICC") seeking a declaration that Churchill's collection efforts were unlawful. The ICC ruled in favor of the petitioners, finding defendants had engaged in unlawful collection efforts and unreasonable

business practices. *See Anacomp, Inc. v. Churchill Truck Lines, Inc.—Petition for Declaratory Order—Certain Rates and Practices of Churchill Truck Lines, Inc.*, No. 41573 (ICC July 31, 1995) (*"Anacomp I"*).

After the ruling, defendants petitioned the ICC for a stay, dismissal, or reopening of the *Anacomp* decision. By Order, dated November 17, 1995, the ICC denied the stay and dismissal, finding the requests frivolous. *See Anacomp, Inc.—Petition for Declaratory Order—Certain Rates and Practices of Churchill Truck Lines, Inc.*, No. 41573 (ICC November 17, 1995) at p. 4 (*"Anacomp II"*). The request to reopen the proceeding was granted, in part, to allow the ICC to explain in detail the bases of its findings. *Id.* at pp. 6–10.[1]

This matter is before the Court on cross-motions. Plaintiffs seek a preliminary injunction, pursuant to Rule 65 of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."). Defendants move to dismiss, or alternatively, seek a stay of these proceedings, pursuant to Fed.R.Civ.P. 12(b)(1), 12(b)(6) and 7(c).[2] The Court heard oral argument on August 31 and October 19, 1995. Based on the files, records, and proceedings herein, and for the reasons stated below, plaintiffs' motions are granted, and defendants' motions are denied.

### I. *Parties and Jurisdiction*

Plaintiffs, AVR, Inc. ("AVR"), and Amidon Graphics ("Amidon"), are shippers of goods. Defendant, Churchill Truck Lines, Inc. ("Churchill"), a Missouri corporation, was a motor common carrier operating in interstate commerce, but no longer engages in that business. Churchill is based in Chillicothe, Missouri. Defendant Trans–Allied Audit Company, Inc. ("Trans–Allied"), a Minnesota corporation, is a collection agency located in Bloomington, Minnesota. Defendant Rodney Johnson, a Minnesota resident, is the sole owner of Trans–Allied. Trans–Allied was retained by Churchill to collect additional freight charges from shippers which had used Churchill's services. Jurisdiction is based on a federal question, pursuant to 28 U.S.C. §§ 1331 and 1337.

### II. *Background*

■ Under the Interstate Commerce Act, 49 U.S.C. § 10101 *et seq.*, motor common carriers must file tariffs for transport of goods over designated routes. Both carriers and shippers must adhere to these filed rates. *Maislin Industries, U.S., Inc. et al. v. Primary Steel, Inc.*, 497 U.S. 116, 119 and 126–29, 110 S.Ct. 2759, 2762 and 2765–67, 111 L.Ed.2d 94 (1990). This is commonly known as the "filed-rate doctrine." *See also* 49 U.S.C. §§ 10761 and 10762. "The filed rate is not enforceable if the ICC finds the rate to be unreasonable." *Maislin*, 497 U.S. at 128–29, 110 S.Ct. at 2767. Accordingly, carriers are obligated to select the least expensive route for transportation unless the shipper instructs otherwise. *See e.g., Hewitt–Robins, Inc. v. Eastern Freight–Ways*, 371 U.S. 84, 87–88, 83 S.Ct. 157, 159, 9 L.Ed.2d 142 (1962).[3]

Churchill's customers were billed according to a published discount tariff, ICC CHTL 682, which provided a rate reduction for irregular routes.[4] After ceasing shipping op-

---

1. The Court observes that, effective January 1, 1996, the ICC was abolished and its functions delegated to the Surface Transportation Board, an agency within the Department of Transportation. *See* ICC Termination Act of 1995, Pub.L. No. 104–88, §§ 101 and 702, 109 Stat. 803, 804 and 933–34 (1995).

    The ICC Termination Act of 1995 contains a savings provision which provides that orders issued by the ICC remain in effect until modified, terminated, superseded, set aside, or revoked in accord with law by the Surface Transportation Board, an authorized official, a court of competent jurisdiction, or operation of law. *Id.* § 204, 109 Stat. at 941. There is no suggestion that *Anacomp I* or *Anacomp II* have been invalidated.

2. Defendants originally sought a stay of proceedings until the ICC could rule on their motion to reopen proceedings in *Anacomp*. The ICC issued its decision on defendants' motion on November 17, 1995. *See Anacomp II*, at pp. 6–10. Accordingly, the motion for a stay is moot.

3. In the aftermath of the *Maislin* decision, Congress enacted the Negotiated Rates Act of 1993, Pub.L. No. 103–180, 107 Stat. 2044. *See Jones Truck Lines, Inc. v. Whittier Wood Prods. Co.*, 57 F.3d 642, 644 (8th Cir.1995) (Murphy, J.).

4. For reasons set forth in its Opinion, the ICC determined Churchill's shipments from all points in the United States, other than Alaska and Ha-

erations in April, 1994, Churchill and Trans–Allied entered into an audit agreement. Trans–Allied agreed to review Churchill's freight bills to determine whether to collect defendants' claimed undercharges from shippers. Based on its audit, Trans–Allied sent demand letters to Churchill's customers, including the plaintiffs. These letters asserted that the recipient-customer is liable for undercharges purportedly based on charges below the filed-rate. The ICC characterized defendants' efforts as an impermissible attempt to rebill shippers for higher rate regular route service for shipments which were initially charged for lower rate irregular route service. *Anacomp II*, at p. 3.

Plaintiffs seek to represent a class of persons who used Churchill's services after January 1, 1991. It is unclear whether all such shippers have, or will receive, Trans–Allied's dunning letters. Plaintiffs claim the dunning letters demand payment under threat of suit and compel an unlawful waiver of rights conferred by the Negotiated Rates Act of 1993.

In June, 1995, plaintiffs commenced this action, asking the Court to enjoin defendants' dunning efforts, to preclude the extraction of waivers of legal rights from unrepresented parties, and to order the escrow of all collected funds pending final judgment. Defendants oppose the motion for injunctive relief, arguing the ICC erred as a matter of law, and state the ICC's determination will be appealed. The United States of America filed a brief on behalf of the ICC, pursuant to 28 U.S.C. § 517.

### III. *Analysis*

■ In the Eighth Circuit, a court must examine four criteria to decide whether to issue a preliminary injunction:

1. The threat of irreparable harm to the movant.

2. The balance between the harm that will result to the nonmoving party and that claimed by the movant.

3. The probability that plaintiff will succeed on the merits.

4. The public interest.

*Dataphase Systems, Inc. v. CL Sys., Inc.*, 640 F.2d 109, 113 (8th Cir.1981). Probable success on the merits is frequently noted as the most important factor. *S & M Constructors, Inc. v. Foley Co.*, 959 F.2d 97, 98 (8th Cir. 1992).

■ Plaintiffs argue they will suffer irreparable harm if defendants' collection efforts continue. The Court agrees. The evidence, thus far, suggests that defendants "calculate" the amount of claimed freight undercharges.[5] Defendants then send a demand letter, accompanied by a lengthy "opinion letter" drafted by their lawyers, suggesting the claims are valid. The "opinion letter" then vaguely hints the plaintiff-recipient may have a tenuous—and expensive—defense.

The recipient is presented with a Hobson's choice: "compromise" the asserted claim at an amount roughly equal to, or a bit lower than, a lawyer's retainer to defend against the demand, or face an expensive lawsuit in federal court. The plaintiffs suggest—and on this record the Court cannot reject—that this practice falls just short of extortion.[6]

Irreparable harm occurs when the hapless plaintiff pays, thereby waiving any right to repayment of sums the ICC has declared to be uncollectible. "Waiver" occurs because part of the defendants' drafted "compromise" requires the plaintiff class member to explicitly waive any defense against the claim. Absent this Court's intervention, there is no assurance any sum collected by defendants will ever be repaid in the event the ICC decision is upheld on appeal. The first *Dataphase* factor favors issuance of an injunction.

---

waii, qualify for Tariff CHTL 682. *See Anacomp I*, at pp. 4–5; *Anacomp II*, at pp. 6–10.

5. Defendants make this calculation in the face of the ICC's two-time declaration that Churchill is not entitled to the payments.

6. Defendants reply that litigants regularly compromise problematic claims when confronted with the reality of litigation costs. This sophis-

try, of course, ignores the fact that the recipient of defendants' lawyer-authored demand for payment is not a "litigant" in any sense. The recipient is an unsuspecting business person/shipper who thought a shipping bill had been paid long ago. The shipper then gets his or her only "advice" from the lawyer for the party demanding payment. An argument that this is analogous to litigation is both uncharming and untenable.

■ The second *Dataphase* factor also favors the issuance of the requested injunction. The Court determines that the harm to the moving party, balanced against the harm which falls on the nonmoving party, favors an injunction. Two bases support this determination. First, there is no direct loss to the defendants. The monies collected are escrowed and will be available to whichever party prevails in this case. Second, notwithstanding defendants' wishes to the contrary, the ICC has twice ruled in *Anacomp* that their claims may not be pursued. Defendants' remedy is to seek reversal—not to continue their efforts to extract funds from an unadvised and unrepresented public.

Defendants argue that a statute of limitations is running on their collection claims. This slender reed cannot be sufficient to show harm. First, it was defendant Churchill, ostensibly having knowledge of its own filed-rates, which entered into the negotiated rates. Second, the ICC has declared the demanded sums uncollectible.[7]

■ The third *Dataphase* factor, the important issue of the probability of success on the merits, strongly favors issuance of the injunction. The ICC, in the *Anacomp* decisions, has determined—and reaffirmed—that defendants' collection efforts are unlawful, and issued a declaratory order holding Churchill's attempts to collect undercharges to be unreasonable. *See Anacomp I*, at pp. 5–6.

■ The United States advises the Court that, until reversed, an ICC decision binds this Court; that a district court cannot annul an order of the ICC; and that defendants' request that this Court rule that *Anacomp* was wrongly decided is an impermissible collateral attack on the ICC's decision.[8] In support, the United States relies upon *Venner v. Michigan Cent. R.R. Co.*, 271 U.S. 127, 130, 46 S.Ct. 444, 444–45, 70 L.Ed. 868 (1926); *Adams v. Resolution Trust Corp.*, 927 F.2d 348, 354 n. 15 (8th Cir.), *cert. den.* 502 U.S. 815, 112 S.Ct. 66, 116 L.Ed.2d 41 (1991). A court must uphold an ICC declaratory order unless the order is arbitrary, capricious, an abuse of discretion, or otherwise not in accord with the law. *See* 5 U.S.C. § 706(2)(A); *Middlewest Motor Freight Bureau v. ICC*, 867 F.2d 458, 460 (8th Cir.1989). The Court does not find the *Anacomp* decisions to be arbitrary, capricious, or an abuse of discretion. Both decisions are in accord with the law, and the Court finds no basis to disregard the ICC orders. The Court finds the plaintiffs have a high probability of success on the merits, and the defendants probability of success is correspondingly low.[9]

■ Finally, the public interest favors issuance of the injunction. The ICC has determined and reaffirmed that defendants' collection efforts are an unreasonable practice. It would be clearly improper, in the face of such a decision, to allow a series of legalese-laden baseless demands to be foisted on a vulnerable public. The public has a right, and a cognizable interest, in being protected from such chicanery.

7. The ICC, *in dicta*, merged the second and third *Dataphase* factors, finding for the plaintiffs as to both factors, stating:

    Respondents are not likely to prevail on the merits. They may be harmed, to the extent that they are unable to collect additional unwarranted undercharges, but mere deprivation of business opportunities cannot constitute irreparable harm. *See Virginia Petroleum Jobbers Ass'n v. FPC, supra,* [259 F.2d 921 (D.C.Cir.1958)] 259 F.2d at 925. Moreover, any harm to respondents is more than outweighed by the harm a stay would cause to the public, and to individual shippers that may be financially incapable of defending themselves in meritless undercharge actions and that may be unable to recover any monies that they pay to respondents to settle improper undercharge claims.

*See Anacomp II*, at p. 6.

8. As discussed, *supra* at n. 1, declarations of the ICC remain binding until modified by the Surface Transportation Board or a court of competent jurisdiction.

9. Defendants have indicated that they will appeal the *Anacomp* decisions. Jurisdiction over such an appeal lies not in the District Court, but in the Court of Appeals.

    The Court of Appeals ... has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of—(5) all rules, regulations or final orders of the Interstate Commerce Commission[.]

*See* 28 U.S.C. § 2342(5). The promise of an appeal, of course, is not a basis upon which to deny the motion for preliminary injunction.

The Court finds that a bond in the penal sum of $10,000.00 is sufficient to protect the defendants and complies with Fed.R.Civ.P. 65(c).

### IV. *Defendants' Rule 12(b)(6) Motion*

As can be seen, *supra*, plaintiffs have demonstrated a reasonable likelihood they will succeed on the merits. The Court determines plaintiffs have alleged claims which, if proven, will entitle them to relief. The defendants' Rule 12(b)(6) motions are denied.

### V. *Defendants' Rule 12(b)(1) Motion*

■ Defendants argue that subject matter jurisdiction is lacking because AVR, and other shippers, have compromised their claims by settling the undercharge claim. The Court rejects the proffered accord and satisfaction defense. To accept such an argument would be a stamp of approval on conduct twice found by the ICC to be unlawful. The Court determines that plaintiffs have pleaded claims under federal law and this Court has subject matter jurisdiction.

### VI. *Conclusion*

For the reasons set forth above, and based on the files, records, and proceedings herein, IT IS ORDERED that:

1. Plaintiffs' motion is granted.

2. Plaintiffs' shall post a bond in the amount of $10,000.00 with the Clerk of Court.

3. Defendants' motions are denied.

### INJUNCTIVE ORDER

WHEREAS, this Court determined by Order, dated January 26, 1996, that it was proper to issue a preliminary injunction, pursuant to Rule 65 of the Federal Rules of Civil Procedure; and

WHEREAS, the parties have advised this Court that defendants have filed more than 400 lawsuits throughout the country to collect sums to which this Court has determined they are not presently entitled;

IT IS HEREBY ORDERED that:

1. Defendants, and all persons in active concert or participation with them, are preliminarily enjoined from making any effort or attempt to collect additional freight charges for any shipments transported by Churchill Truck Lines, Inc., under tariff MWB 101.

2. Defendants are ordered to provide to the Court and counsel for the plaintiff class an accounting of each additional freight charge collected in excess of the lowest discount rate originally charged. The accounting shall identify for each shipper as to which, or whom, such payment has been collected: (a) the shipper's name, address, and telephone number; (b) the amount and date of the original tariff paid; (c) a copy of all letters or written communications sent to the shipper by the defendants, any of their agents, or counsel; (d) a copy of any documents sent by the shipper to the defendants; (e) a statement of whether a lawsuit has been commenced in any state or federal court to collect said sum; and (f) a copy of each pleading which has been filed.

This audit shall be completed and filed with the Court on or before March 1, 1996.

3. Defendants shall place all funds collected, pursuant to the audit required in paragraph 2, above, in an interest bearing escrow account, at a federally insured bank or financial institution within the jurisdiction of this Court, or alternatively, defendants shall file a surety bond in a penal sum in excess of the total sums collected. Said funds shall not be disbursed or otherwise dissipated, nor shall the bond be diminished or impaired, absent further order of this Court. Information identifying the account shall be provided to the Court and counsel for the plaintiff class within 30 days of this Order.

4. Defendants shall identify to the Court and counsel for the plaintiff class the case caption, court file number, and presiding judicial officer of every lawsuit which has been commenced seeking additional freight charges in excess of the lowest discount rate initially charged. In each such case, counsel representing Churchill and/or Trans–Allied shall forthwith serve upon the shippers in those actions, or their counsel, a copy of this Order and the Court's Order of January 26, 1996. Defendants' counsel shall also file a copy of both Orders with the Clerk of Court

in which said actions are pending. Defendants shall advise this Court of their compliance with this directive on or before March 1, 1996.

5. Defendants are preliminarily enjoined from initiating or otherwise pursuing any litigation wherein they seek to collect additional freight charges in excess of the lowest discount rate initially charged.

6. This Order shall be effective upon the filing of a bond in the penal sum equal to $10,000.00 by counsel for the plaintiff class, pursuant to Rule 65(c) of the Federal Rules of Civil Procedure, as directed in this Court's Order, dated January 26, 1996.

IT IS SO ORDERED.